Christopher Marcus **JOHNSON**,
et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA,** Defendant.

No. CIV. 01–0518(EGS).

United States District Court,
District of Columbia.

March 28, 2002.

Ronald Lee Drake, Washington, DC, for Plaintiffs.

Charlotte Anne Bradley, Office of Corporation Counsel, D.C., Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

Plaintiffs, Christopher Marcus Johnson and his mother, Pamela Annette DeNeal, filed this lawsuit alleging violations of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., and 42 U.S.C. § 1983. Plaintiffs allege that the District of Columbia Public Schools (DCPS) violated the IDEA's right to counsel and attorney's fees provisions by including in a settlement offer a waiver of attorneys fees, and by the subsequent conduct of the DCPS at a hearing in which plaintiffs challenged the fee waiver provision of the settlement. In addition to alleging that the DCPS violated plaintiffs' right to counsel and fees in this particular case, plaintiffs also allege that it is the DCPS' ongoing custom, policy, and practice to interfere with the statutory rights to counsel and fees of plaintiffs bringing complaints pursuant to IDEA, in violation of IDEA and § 1983.

This case comes before the Court on defendant's motion to dismiss. Defendant argues that plaintiffs waived any right to challenge the settlement agreement when they entered into that agreement of their own free will. Defendant also argues that the Supreme Court's decision in *Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) precludes plaintiffs' challenge to the fee waiver contained in the settlement offer and argues that plaintiffs are not entitled to any attorney's fees after the Supreme Court's decision in *Buckhannon Board and Care Home Inc., v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Therefore, argues defendant, plaintiffs have failed to state a claim under either IDEA or § 1983.

Also before the Court is plaintiffs' motion for an order barring implementation of a policy announced by DCPS by way of a memorandum dated August 31, 2001 ("the Perelman Memo"). In response, defendant incorporates the arguments raised in its motion to dismiss, as well as argues that plaintiffs lack standing to challenge this policy.

Upon consideration of defendant's motion to dismiss, and the opposition and reply thereto, as well as the applicable statutory and case law, the Court concludes that plaintiffs have stated a claim under both IDEA and § 1983. Defendant's motion is hereby **DENIED**.

Upon consideration of plaintiffs' motion for injunctive relief, the opposition and reply thereto, as well as the applicable statutory and case law, the Court concludes that plaintiffs have not established standing to challenge the policy announced in the August 31, 2001 memorandum. Plaintiffs' motion is therefore **DENIED WITHOUT PREJUDICE** to raising the issue at a later point in this case.

## BACKGROUND

Plaintiff Christopher Marcus Johnson is a child in need of special education services. Christopher's mother, plaintiff Pamela Annette DeNeal, hired the services of an attorney, Ronald Drake, to assist her in acquiring a special education evaluation and services from the DCPS.

Ms. DeNeal alleges that her quest for special education services for Christopher was protracted unnecessarily by DCPS. After at least a year of trying to get the DCPS to evaluate her son's need for special education services, Ms. DeNeal became aware that DCPS may have already evaluated her son. Plaintiffs' attorney filed a request for a hearing seeking an order that the DCPS provide plaintiffs with a copy of the reports of the evaluations of Christopher that DCPS had already conducted.

After the filing of the hearing request, plaintiffs' counsel and counsel for the DCPS entered into settlement negotiations. On January 24, 2001, DCPS, through its counsel Jeffrey Kaplan, made a settlement offer that agreed to much more than the relief plaintiffs were seeking at their requested hearing. In particular, the settlement offer stated that DCPS would convene a placement meeting to determine Christopher's eligibility for special services within 10 days of the receipt of all independent evaluation reports. If Christopher was found eligible, DCPS agreed to develop an individualized education plan, and send referrals to at least three schools proposed by Christopher's parents. DCPS agreed to issue a notice of placement within 10 days of Christopher's being found eligible for services. DCPS also agreed, in the event that Christopher was found eligible for services, to immediately award fifty hours of one-on-one tutoring as compensatory education for past denials of such requests. DCPS agreed to fund this tutoring within certain limits. *See* Complaint, Ex. 2.

DCPS conditioned the settlement offer on the following term: "The parent waives any right to prevailing party status and will not seek legal fees and associated costs in regard to this matter." Complaint, Ex. 2. Plaintiffs' counsel recognized that the simultaneous generous offer of services and waiver of attorneys' fees created a conflict between the interest of counsel and interest of the plaintiffs. When Mr. Drake relayed the terms of this settlement offer to Ms. DeNeal, she also recognized the conflict. Despite this conflict, Ms. DeNeal instructed her counsel to sign the settlement offer on her behalf because it was in Christopher's best interest. The settlement offer was signed on January 24, 2001. Ms. DeNeal also authorized her counsel to request an administrative hearing to assert her complaint that the DCPS had violated her right to counsel under IDEA by inserting the fee waiver language into the settlement offer.

The hearing was scheduled for March 1, 2001. Prior to the hearing, on February 22, 2001, DCPS sent Mr. Drake a "Disclosure Notice" that included a list of proposed witnesses for the upcoming hearing.

Those witnesses included Mr. Drake, counsel for plaintiffs, and three famous dead authors, including "J.P. Sartre," "B. Brecht," and "L. Carroll." Complaint, Ex. 3. That notice was signed by Mr. Kaplan. At the hearing on March 1, 2001, Mr. Drake objected to being called as a witness and to the content of the Disclosure Notice generally. Mr. Drake offered the Disclosure Notice as further evidence of DCPS' actions with respect to interference with his clients' right to counsel. The hearing officer refused to admit the Notice into evidence. Plaintiffs allege that at the hearing, DCPS orally moved to strike Mr. Drake's name from the witness list, but refused to withdraw the Disclosure Notice. The hearing officer's written determination, see Complaint, Ex.1, states that the Disclosure Notice was not entered into evidence because Mr. Kaplan spoke with Mr. Drake about it on February 22, 2001 and withdrew the notice.

At the hearing, Mr. Drake attempted to offer written stipulated facts into the record, but DCPS refused to agree to those stipulations. Complaint, Ex. 4. Mr. Drake then attempted to enter those facts into evidence as proffers, but the document was not accepted into the record. Ms. DeNeal had waived her right to be present at the hearing, and plaintiffs' counsel did not intend to call her as a witness. However, the hearing officer ruled that plaintiff must testify in order to challenge the settlement agreement. After she ruled that Ms. DeNeal, who was not present, must testify, the hearing officer then denied plaintiffs' counsel's request to continue the hearing in order to be allowed time for Ms. DeNeal to present testimony. The hearing officer then dismissed the case.

The hearing officer's written determination offers two conflicting grounds for dismissing the case. The hearing officer first holds that she did not have jurisdiction to hear a challenge to a settlement agree-

ment on the grounds that the proposed fee waiver impermissibly interfered with plaintiffs' right to counsel under IDEA. However, the hearing officer then concluded the evidence established that plaintiff voluntarily entered into the settlement agreement and that there was no evidence of coercion, duress, or lack of understanding. The hearing officer also concluded that there was no evidence that the provision of an appropriate educational placement for Christopher was jeopardized by the agreement, and consequently dismissed the complaint.

Plaintiffs filed this lawsuit on March 12, 2001 alleging that the DCPS had violated IDEA and § 1983. On September 4, 2001, plaintiffs filed a motion for an order barring the implementation of a DCPS policy reflected in a memorandum issued on August 31, 2001. See Plfs' Motion, Ex. 1. The memorandum was issued by Paula Perelman, Executive Director, Mediation and Compliance, Division of Special Education, DCPS. Id. The Perelman Memo was addressed to "Attorneys Who Represent Parents Who Prevail Against the D.C. Public Schools in Actions Brought Under the Individuals with Disabilities Act." It stated that pursuant to its interpretation of the Supreme Court's May 29, 2001 decision in Buckhannon,

> effective September 1, 2001, DCPS will not pay attorneys' fees incurred in the course of executing a settlement agreement with an attorney representing a parent who alleges a DCPS violation of the IDEA unless the payment of these fees is a negotiated term of the settlement agreement in question.

Id.

## DISCUSSION

### I. Defendant's Motion to Dismiss

### A. Standard of Review

The Court will not grant a motion to dismiss for failure to state a claim pursu-

ant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). Accordingly, at this stage of the proceedings, the Court must accept as true all of the complaint's factual allegations. *See Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985). Plaintiffs are entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal,* 16 F.3d at 1276.

## B. IDEA Claims

IDEA seeks to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). As a condition of receiving funds, IDEA requires school districts to adopt procedures to ensure appropriate educational placement of disabled students. *See* 20 U.S.C. § 1413. In addition, school districts must develop comprehensive plans for meeting the special educational needs of disabled students. *See* 20 U.S.C. § 1414(d)(2)(A). Known as "individualized education programs," or IEPs, these plans must include "a statement of the child's present levels of educational performance, . . . a statement of measurable annual goals, [and] a statement of the special education and related services . . . to be provided to the child. . . ." 20 U.S.C. § 1414(d)(1)(A).

In addition, IDEA guarantees parents of disabled children considerable and detailed procedural rights. Parents are entitled to an opportunity to participate in the identification, evaluation, and placement process. *See* 20 U.S.C. §§ 1414(f), 1415(b)(1). Included in this right to participate is the right to file complaints. IDEA gives parents

> an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of this child, or the provision of a free appropriate public education to such child.

§ 1415(b)(6). Parents who file such complaints are entitled to an "impartial due process hearing," 20 U.S.C. §§ 1415(f)(1). Importantly, IDEA contains several requirements for these impartial hearings, including:

> (1) the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities
>
> (2) the right to present evidence and confront, cross-examine, and compel the attendance of witnesses.

§ 1415(h). Parents "aggrieved by" a hearing officer's findings and decision may bring a civil action in either state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2). Furthermore, IDEA provides for attorney's fees: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." § 1415(i)(3)(B).

The DCPS's long and unfortunate history of noncompliance with IDEA is well established. *See, e.g., Calloway v. District of Columbia,* 216 F.3d 1, 3 (D.C.Cir.2000) ( finding that DCPS has failed to meet its obligations under IDEA is a "fact no one disputes"). The DCPS's failure to comply with IDEA has resulted in "significant delays both in the placement of children in

appropriate educational settings and in the provision of crucial medical services, delays that have the potential to permanently harm the physical and emotional health of many young children." *Blackman v. District of Columbia*, 185 F.R.D. 4, 5 (D.D.C. 1999). The DCPS' hostility to the legal fees paid to attorneys who successfully bring IDEA actions against DCPS has also been documented. *See Calloway*, 216 F.3d at 4 (quoting a Washington Post article as stating, "these attorney fees rankle school officials who say the money should be spent on children"). Indeed, in part because of the significant amount of money being spent on attorneys' fees by DCPS, Congress in 1999 and 2000 capped the amount of fees available to attorneys who bring IDEA cases against DCPS.[1] *Id.*

Plaintiffs in this case allege that DCPS has violated several provisions of IDEA and § 1983. Specifically, plaintiffs allege that DCPS's conditioning of a settlement offer on a fee waiver, and actions at the hearing requested by plaintiffs to challenge that waiver, violated plaintiffs' right to counsel guaranteed by § 1415(h)(1). Plaintiffs also allege that the DCPS is engaged in an unlawful pattern and practice designed to limit access of IDEA plaintiffs to legal representation, in violation of various provisions of IDEA, including § 1415(h)(1), and § 1415(i)(3)(B). Further, plaintiffs allege the hearing officer's refusal to admit certain evidence into the record and shifting of the burden of proof at the hearing to plaintiffs violated several procedural provisions of IDEA. Finally, plaintiffs allege that these violations of IDEA also constitute violations of § 1983's protection against deprivations of rights secured by the Constitution and laws of the United States.

Defendants have responded by moving to dismiss some of these claims. Defendant argues that plaintiffs' settlement with DCPS bars their claims here, and that in any event plaintiffs are not entitled to any fees because after *Buckhannon Board and Care Home Inc., v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), plaintiffs are not prevailing parties. Defendant also argues that plaintiff fails to state a claim under IDEA because under the Supreme Court's decision in *Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986), the DCPS is permitted to condition settlement offers on fee waiver. Finally, defendant argues that because plaintiffs have suffered no injury from the settlement agreement, they have no claim under § 1983 based on those IDEA violations.

### 1. Plaintiffs' Right to Counsel under IDEA

■ IDEA provides that parents who file complaints pursuant to IDEA are entitled to an impartial due process hearing, and at that hearing, have "the right to be accompanied and advised by counsel." § 1415(h)(1). Plaintiffs allege that DCPS has violated that right in several ways in this case, and that the violations here reflect a larger ongoing policy of denying and infringing the right of parents to representation by competent counsel when challenging DCPS actions that violate IDEA. Such allegations state a claim for a violation of IDEA.

■ Defendant's first argument in response to plaintiff's claims under IDEA and § 1983 is that because plaintiffs settled their underlying administrative pro-

---

[1] The law passed by Congress providing appropriations to the District of Columbia for 2002 removed this cap. *See* District of Columbia Appropriations Act, 2002, 115 Stat. 923, P.L. 107–96.

ceeding they are somehow barred from bringing this lawsuit to challenge the actions of DCPS. This argument is without merit. Plaintiffs are not suing to resolve their original claim that Christopher was entitled under IDEA to special education services, that claim was settled on January 24, 2001. Rather, plaintiffs are challenging the actions by DCPS in negotiating that settlement agreement and in conducting the subsequent administrative hearing, as violations of IDEA's right to counsel provision, and as part of DCPS' larger policy of violating that right. The fact that plaintiffs settled their underlying claims in no way precluded them from filing an administrative complaint with respect to any DCPS actions that created a conflict between their interests and their attorney's interest, and in no way precludes the filing of this lawsuit to challenge those actions.[2]

Defendant also argues the Supreme Court's opinion in *Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) somehow authorizes the actions taken by DCPS with respect to plaintiffs. Defendant is mistaken. There are several very important differences between *Jeff D.* and this case.

*Jeff D.* involved the interpretation of the Civil Rights Attorney's Fees Awards Act of 1976 (Fees Act). 42 U.S.C. § 1988. The Fees Act states, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee" in actions pursuant to several enumerated federal statutes. *Id.* The issue presented to the Supreme Court was whether the Fees Act required a district court to disapprove a civil rights class action settlement when the offered relief equaled or exceeded the probable outcome at trial but was expressly conditioned on a waiver of attorney's fees. 475 U.S. at 731, 106 S.Ct. 1531. The Court held that a district court could, in its discretion pursuant to the Fees Act, approve such a settlement.

■ *Jeff D.* stands for the proposition that the legality of settlement offers conditioned on the waiver of attorney's fees depends on the text of the statute that authorizes the fees. Nothing in the Fees Act explicitly precluded such an offer, nor did the Supreme Court read such a prohibition into the Act based on the underlying purpose of encouraging the availability of legal representation for civil rights actions. *Id.* at 737, 106 S.Ct. 1531. The Supreme Court spent much of the opinion discussing the argument that the purpose of the Fees Act required the Court to read into the statute a prohibition on settlements conditioned on fee waivers. *Id.* ("We conclude, therefore, that it is not necessary to construe the Fees Act as embodying a general rule prohibiting settlements conditioned on the waiver of fees in order to be faithful to the purposes of the Act.").

In this respect, IDEA is very different from the Fees Act. Plaintiffs do not rest their challenge to such settlement offers by DCPS solely on the attorney's fees provision of IDEA, § 1415(i)(3)(B). Rather, plaintiffs allege that such offers in themselves violate, and are part of an ongoing policy of violating, IDEA's right to counsel provision, § 1415(h)(1). The Fees Act at issue in *Jeff D.* contains no explicit right to counsel provision. The fee waiver offer made by DCPS could violate § 1415(h)(1) if that offer undermined plaintiffs' ability to receive the unconflicted representation

---

**2.** Defendants' argument that plaintiff's case should be dismissed because they are not prevailing parties after *Buckhannon* fails for similar reasons. Plaintiffs are not arguing that they are prevailing parties as a result of the favorable settlement agreement reached, but rather that defendant's conduct violated the IDEA and § 1983. The implications of *Buckhannon* for plaintiff's IDEA claims are discussed further below.

by their attorney. Furthermore, the conduct of the DCPS during the administrative hearing requested by plaintiffs to challenge that fee waiver provision also raises serious questions about the DCPS' intent to interfere with plaintiffs' legal representation. Finally, the fee waiver and DCPS' other actions are alleged to be part of a larger policy intended to violate the right to counsel under IDEA of children and parents in the District of Columbia. Neither the logic nor holding of *Jeff D.* prohibit such a claim based on this provision of IDEA.

### 2. Plaintiffs' Right to Attorney's Fees under IDEA.

■ Plaintiffs have also stated a claim for a violation of the attorney's fees provision of IDEA, § 1451(i)(3)(B), based on the allegation that DCPS is engaged in an ongoing vindictive and retaliatory effort to deny parents of children in need of special services access to legal representation by conditioning settlement offers on fee waivers. The fees provision of IDEA states, "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." § 1415(i)(3)(B). This language is very similar to that in other fee-shifting statutes, including the Fees Act at issue in *Jeff D.* See 42 U.S.C. § 1988 ("the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee"). The *Jeff D.* court suggested, but did not decide, that in two specific situations fee waiver proposals by defendants could violate the Fees Act: first, when a defendant adopts a uniform state or city-wide policy of insisting on fee waivers as part of settlement offers; and second, when the waiver offer was part of a "vindictive effort to teach counsel that they had better not bring such cases." *Id.* at 740, 106 S.Ct. 1531.

Plaintiffs have alleged facts to support finding that both those situations occurred here.

With respect to a uniform policy of insisting on fee waivers, the Supreme Court stated the following in *Jeff D.*:

> Specifically respondents assert that the State of Idaho could not pass a valid statute precluding the payment of attorney's fees in settlements of civil rights cases to which the Fees Act applies. From this they reason that the Fees Act must equally preclude the adoption of a uniform state-wide policy that serves the same end, and accordingly contend that a consistent practice of insisting on a fee waiver as a condition of settlement in civil rights litigation is in conflict with the federal statute authorizing fees for prevailing parties, including those who prevail by way of settlement. Remarkably there seems little disagreement on these points.

*Id.* at 739, 106 S.Ct. 1531. The Supreme Court ultimately declined to resolve the issue because the record before it did not support a finding that such a policy existed. *Id.* at 740, 106 S.Ct. 1531 ("We find it unnecessary to evaluate this argument, however, because the record in this case does not indicate that Idaho has adopted such a statute, policy or practice."). If plaintiffs in this case can demonstrate after discovery that DCPS has a consistent policy or practice of conditioning settlement offers on fee waivers in IDEA cases, defendant will be hard-pressed to argue that it has not violated the fee provision of IDEA. The District through the creation of policy can not refuse to obey federal law that allows for attorneys fees in these cases, and that was explicitly designed to encourage and provide for legal representation for parents of disabled children. The only body with the authority to amend IDEA is Congress itself.

Second, with respect to a defendant's vindictive intent to deny access to counsel, the Supreme Court also suggested that such an intent would be highly problematic. *Id.* at 740, 106 S.Ct. 1531 (explaining that the Solicitor General suggested in argument that a fee waiver should not be approved if part of a "vindictive effort... to teach counsel that they had better not bring such cases"). Once again, because the record before it did not support such a finding, the Supreme Court declined to reach this issue. *Id.* ("Nor does the record support the narrower proposition that petitioners' request to waive fees was a vindictive effort to deter attorneys from representing plaintiffs in civil right suits against Idaho."). As suggested by the Supreme Court, proof of a vindictive intent by DCPS, which includes but is not limited to the waiver offer, can constitute a violation of IDEA's attorney's fees provision. In this case, the Court is troubled by plaintiffs' allegations and the supporting documentation attached to the complaint. The fee waiver in the settlement agreement, the February 22, 2001 letter from DCPS counsel to plaintiffs' counsel listing plaintiffs' counsel as well as three dead famous individuals as witnesses in the upcoming hearing, as well as the hearing officer's subsequent treatment of plaintiffs' claims, all raise serious questions about DCPS' intent with respect to the rights guaranteed plaintiffs under IDEA.

In deciding whether to construe the Fees Act to prohibit conditioning settlement offers on fee waivers, the *Jeff D.* Court examined in detail the competing values of promoting the vindication of civil rights and encouraging settlement. 475 U.S. at 730—38, 106 S.Ct. 1531. Because of the differences between IDEA and the Fees Act, that balance of competing values comes out differently here. The Supreme Court found defendants' need for finality and potentially large liability for fees weighed heavily in favor of allowing simultaneous merits and fees negotiations. In particular, that Court stated, "[t]he defendants' potential liability for fees in this kind of litigation can be as significant as, and sometimes even more significant than, their potential liability on the merits." *Id.* at 734, 106 S.Ct. 1531. The Supreme Court opined that such large amount of potential liability for fees may "darken the prospects for settlement if fees cannot be negotiated," thereby undermining the plaintiffs' interest in achieving favorable settlements of civil rights actions. *Id.* at 735, 106 S.Ct. 1531. This argument does not necessarily apply to fee awards in the District of Columbia in IDEA cases after 1999. Fee awards under IDEA in the District of Columbia were capped by Congress in an intentional effort to reduce the cost of attorneys fees to the DCPS. *See Calloway,* 216 F.3d at 3. Thus, the potential liability of the District for attorney's fees under IDEA during the existence of the cap was significantly less than under other civil rights statutes. The Supreme Court in *Jeff D.* also cited the potential for Courts under the Fees Act to apply a multiplier to enhance fee awards as contributing to the need for settlement because of the uncertainty and size of defendants' potential liability. 475 U.S. at 736, 106 S.Ct. 1531. In contrast to the Fees Act, multipliers are not available for fee awards pursuant to IDEA. *See* § 1415(i)(3)(C). Because fee awards could be significantly less under IDEA than awards under the Fees Act, especially in the District of Columbia, the ability of DCPS to predict its potential liability for fees is much greater than that discussed by the Supreme Court in *Jeff D.* Therefore, the strong policy in favor of settlement of fees at work in *Jeff D.* does not carry the same force here. As a result, this Court should be more inclined to hold

that settlement offers conditioned on fee waivers, when part of a consistent policy by DCPS, or as part of a vindictive effort to undermine the right of parents and children to counsel, violate the IDEA's attorney's fee provision, § 1415(i)(3)(B).

This Court's analysis is not altered by the Supreme Court's recent holding in *Buckhannon Board and Care Home Inc., v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The holding of *Buckhannon* does not preclude an award of fees to plaintiffs who settle IDEA claims during either administrative or judicial proceedings. *But see Akinseye v. District of Columbia*, No. 01–CV–1769 (D.D.C. filed March 19, 2002). Because fees can be available to settling parties under IDEA's fees provision, following the Supreme Court's logic in *Jeff D.*, any policy or practice that intentionally or vindictively denies fees to all settling plaintiffs conflicts with that fees provision.

The question presented to the Supreme Court in *Buckhannon* was whether the term "prevailing party" included a party that achieved its desired result because its lawsuit brought about a voluntary change in the defendant's behavior prior to judicial resolution of plaintiff's claims. 532 U.S. at 600, 121 S.Ct. 1835. The holding of *Buckhannon* must be read in light of the facts of that case. The plaintiff in *Buckhannon* was a nursing home that failed a fire inspection and subsequently sued the State of West Virginia on the grounds that the law setting forth the standard for fire inspections violated the Fair Housing Act Amendments of 1988 (FHAA), 102 Stat. 1619, 42 U.S.C. § 3601 *et seq.*, and the Americans With Disabilities Act of 1990(ADA), 104 Stat. 327, 42 U.S.C. § 12101 *et seq. Id.* at 601, 121 S.Ct. 1835. During the litigation, the West Virginia legislature repealed the law at issue, and the District Court dismissed the suit as moot. *Id.* Plaintiffs filed for attorney's fees under the fees provisions of the FHAA and the ADA, arguing that they were a prevailing party under the "catalyst theory." The Supreme Court, over a vigorous dissent, rejected that argument and held that a defendant's "voluntary change in conduct" did not cause the "alteration in the legal relationship of the parties" required for "prevailing party" status. *Id.* at 605, 121 S.Ct. 1835.

In deciding that West Virginia's voluntary elimination of the law in question could not provide the basis for prevailing party status, the Supreme Court did discuss whether the term "prevailing party" covered other factual scenarios. The Court confirmed its long-standing precedent that a judgment on the merits can give rise to prevailing party status. *Id; see also Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Similarly, the Court confirmed that a court-ordered consent decree can also give rise to prevailing party status. *Id.; see also Maher*, 448 U.S. at 126, 100 S.Ct. 2570. The Court did *not* then resolve the issue of whether a plaintiff who enters a private settlement agreement could be considered a prevailing party, but did arguably express skepticism that such a private settlement could alter the legal relationship between the parties. *Id.* at 604 n. 7, 121 S.Ct. 1835; *see also id.* at 605, 121 S.Ct. 1835 (referring to "judicially sanctioned change in the legal relationship" and "the necessary judicial *imprimatur*").

It is true that some courts have extracted from this skepticism a directive to bar attorney's fees under any statute including the "prevailing party" language absent a judgment or court-ordered consent decree. *See, e.g., J.C. v. Regional School District 10*, 278 F.3d 119 (2d Cir.2002); *Akinseye v. District of Columbia*, No. 01–CV–1769

(D.D.C. filed March 19, 2002). However, for several reasons, this Court declines to extend the holding in *Buckhannon* so far.

First, entering into a private settlement agreement *does* alter the legal relationship of the parties in a real and substantial manner. *See, e.g., Kokkonen v. Guardian Insurance Company of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (recognizing breach of contract claim arising out of failure to comply with private settlement of federal lawsuit, but holding that state, rather than federal, courts have jurisdiction to hear such claims). Thus, the Supreme Court's requirement that in order to qualify as a prevailing party requires an enforceable change in the legal relationship is in fact met when parties enter a private settlement.[3] *See also Farrar v. Hobby*, 506 U.S. 103, 113, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (holding that for purposes of the prevailing party determination, "a material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant").

Second, while the D.C. Circuit has yet to be faced with this issue, this Court agrees with the Ninth Circuit's opinion in *Barrios v. California Interscholastic Federation*, 277 F.3d 1128 (9th Cir.2202). That court held that *Buckhannon* did not preclude an award of attorney's fees to a plaintiff who entered into a settlement agreement. *Id.* at 1134 n. 5. The Ninth Circuit rejected the argument that the Supreme Court's dictum in *Buckhannon* about private settlements could overcome prior Ninth Circuit precedent holding that private settlements do constitute a material alteration in

the legal relationship between two parties sufficient to confer prevailing party status on a plaintiff. *Id.* Similarly, without a holding from the Supreme Court or the D.C. Circuit to the contrary, this Court will not reject prior D.C. Circuit precedent that allows for the award of attorney's fees to plaintiffs who enter into private settlement agreements. *See, e.g., Grano v. Barry*, 783 F.2d 1104 (D.C.Cir.1986).

Finally, precluding awards of fees to plaintiffs who settle their IDEA claims would undermine the purposes of IDEA. The attorney's fees provision of IDEA must be read in the context of the entire statute. IDEA sets forth very detailed procedures for parents and children who challenge a school system's failure to comply with its provisions. *See generally,* § 1415. As part of those procedural rights, IDEA recognized the need of parents and children for legal representation, in particular the "right to be accompanied by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities." § 1415(h)(1). The fees provision serves to assist parents in obtaining legal representation, and further deters the school system from violating the substantive provisions of the law. § 1415(i)(3)(B). Many of the parents who sue DCPS will not have the money to hire an attorney without the fees provision. Eliminating the ability of such parents to receive the money with which to pay their attorneys if they decide to settle will place parents in the conflicted position of choosing between legal representation and their child's interests in an expeditious settlement. Thus, if the Court

---

**3.** The fact that the settlement agreement involves less oversight and approval than does a court-ordered consent decree, *see Buckhannon*, 532 U.S. at 604 n. 7, 121 S.Ct. 1835, is immaterial to whether that settlement agreement is legally enforceable by a court. *Cf.*

*Kokkonen*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (difference between settlement approved pursuant to Federal Rule of Civil Procedure 41(a)(2) and private settlement is whether breach of contract claim arises in federal or state court).

holds that fees are not available to settling parties, one of the purposes of IDEA, encouraging settlement of claims, or providing adequate counsel to parents, must give. This Court refuses to read the word "prevailing party" to require such a result.

In addition, for similar reasons, *Buckhannon* does not preclude the award of fees pursuant to the IDEA fees provision to plaintiffs who settle their IDEA claims during administrative proceedings. The IDEA provision states that fees are available to prevailing parties in "any action or proceeding brought under this section," language which includes federal civil actions and administrative proceedings. § 1415(i)(3)(B); *see also, e.g., Moore v. District of Columbia*, 907 F.2d 165 (D.C.Cir.1990) (holding that fees are available to attorneys under IDEA for work done at administrative level); *accord King v. Floyd County Board of Education*, 228 F.3d 622, 625 (6th Cir.2000); *Johnson v. Bismarck Pub. Sch. Dist.*, 949 F.2d 1000, 1003 (8th Cir.1991). Because fees are available under IDEA for both administrative and judicial proceedings, the timing of the settlement is of no moment to the determination of who is a prevailing party. By settling an administrative IDEA claim, a defendant school system commits itself to an alteration of its behavior with respect to a child's education just as it does when settling a federal lawsuit pursuant to IDEA. Furthermore, as discussed above, IDEA encourages settlement at the administrative level, but also envisions legal representation during that process, *see* § 1415(h)(1). These dual purposes would be undermined if plaintiffs were precluded by their inability to pay counsel from receiving the legal representation that the statute envisions.

Because this Court refuses to extend *Buckhannon* beyond its holding, it is free to conclude that attorney's fees are available to plaintiffs who pursue IDEA claims against the DCPS that result in the private settlement of those claims during either the administrative hearing process or a federal civil action. As explained above, because attorney's fees are available under IDEA to individuals such as plaintiff, either a consistent policy and practice of requiring fee waivers in settlement agreements or an intentional or vindictive attempt to prevent plaintiffs who challenge DCPS actions from recovering fees and therefore retaining legal representation could violate the fees provision of IDEA.

For all these reasons, because plaintiffs have alleged facts that show a custom, practice, or policy by DCPS to infringe the rights of parents and children to legal representation under IDEA, and a vindictive intent to cause such infringement, plaintiffs have stated a claim for a violation of the IDEA attorney's fees provision, § 1415(i)(3)(B).

### 3. Plaintiffs' Procedural Right to an Impartial Hearing

Defendant's motion to dismiss fails to address plaintiff's claims under IDEA based on problems with the March 1, 2001 hearing. *See* Complaint at ¶¶ 38—41. For example, plaintiffs allege that the hearing officer intentionally refused to admit evidence relevant to plaintiff's arguments. *Id.* at ¶¶ 38—39. Plaintiffs also argue that the hearing officer impermissibly shifted the burden of proof on to plaintiff by requiring that plaintiff testify, and then dismissed the complaint because plaintiff was not present to testify. *Id.* at ¶¶ 40—41. Because defendant has failed to address these claims, plaintiffs' allegations with respect to procedural violations at the March 1, 2001 hearing survive.

### C. Plaintiffs' § 1983 Claim

IDEA violations can be the predicate for a § 1983 claim based on

those statutory violations. *See, e.g., Walker v. District of Columbia,* 969 F.Supp. 794 (D.D.C.1997); *see also* § 1415. Section 1983 states

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. In any § 1983 action against a municipality such as the District of Columbia, the burden is on the plaintiffs to establish that the municipality has a custom or practice that caused the alleged constitutional or statutory violation. *See, e.g., Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Daskalea v. District of Columbia,* 227 F.3d 433, 441 (D.C.Cir.2000). Plaintiffs here have alleged that the DCPS has a custom, policy, or practice of interfering with the right to counsel guaranteed by IDEA to disabled children and their parents. Plaintiffs' complaint cites several actions by DCPS that allegedly reflect this policy. First, DCPS invests the same official with the power to negotiate settlements of IDEA claims and to negotiate settlements of fees. While simultaneous fee and merits settlement negotiations are not *per se* illegal or unethical, they could be relevant evidence of an intent to undermine the ability of plaintiffs to retain unconflicted counsel. Second, DCPS has conditioned settlement offers on the waiver of attorneys' fees. This could reflect the intentional creation of a conflict of interest between plaintiffs and plaintiffs' counsel in an attempt to deprive plaintiffs of their rights to fees and counsel. In addition, in this case plaintiffs have presented documents, in the form of a witness list for an administrative hearing that named plaintiffs' counsel and three famous dead people, that could reflect a vindictive and retaliatory attitude by DCPS toward counsel who vigorously represent their clients. This Court finds that plaintiffs' allegations constitute sufficient support for their § 1983 claim to survive defendants' motion to dismiss.

Defendant's *sole* argument in opposition to plaintiffs' § 1983 claim is that plaintiffs have failed to allege a sufficient injury to sustain a claim under § 1983. Insofar as defendant is attempting to argue that plaintiffs lack standing under Article III of the Constitution, it has done nothing to support that argument. Defendant cites no standing cases to support its claim, which was raised in its Reply brief for the first time, that plaintiffs lack standing to challenge the actions of the DCPS at issue here. Therefore, the Court has no choice but to disregard these undeveloped and unsupported statements in defendant's brief. As explained above, plaintiffs have alleged sufficient injury as a result of the DCPS' alleged pattern and practice of infringing children and parents' rights to counsel under IDEA to state a § 1983 claim.

## II. Plaintiffs' Motion for Injunctive Relief

Plaintiffs argue that the Perelman Memo issued August 31, 2001 that announces DCPS' policy of not paying attorney's fees to parents who agree to settle their IDEA claims unless the fees are a negotiated term in the settlement is part of the DCPS' pattern and practice of denying parents and children access to legal representation. Defendant's one page response simply incorporates its previous motion to dismiss arguments, and chal-

lenges plaintiff's standing to challenge this policy.

Despite DCPS's questionable reading of *Buckhannon*,[4] upon review of the pleadings before the Court, plaintiffs have failed to establish their standing to challenge the implementation of this specific policy. In order for this Court to grant preliminary injunctive relief, plaintiffs must establish, among other things, that they will suffer imminent harm as a result of this policy. See, e.g., *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n. 8, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (holding that a plaintiff has no standing to request injunctive relief where he can not demonstrate "a real and immediate threat of future injury by the defendant"); *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268 (D.C.Cir.1994).

In plaintiffs' reply brief, plaintiffs allege that subsequent to the settlement of their underlying claim in January of 2001 and independent of the attorney's fees issue, plaintiffs recently challenged DCPS' failure to provide adequate services for Christopher. Therefore, argue plaintiffs, the potential resolution of that new IDEA claim via settlement brings plaintiffs within the impact of the Perelman memo. Plaintiffs have submitted only the unsubstantiated assertions of counsel to establish this potential injury. Without even an affidavit from plaintiffs, the Court has no basis on which to find that plaintiffs have or will suffer an irreparable harm from the implementation of this policy. Injunctive relief is therefore inappropriate at this stage of the case.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss is **DENIED**; it is

**FURTHER ORDERED** that the defendants may file appropriate responsive pleadings no later than Friday, April 5, 2002; it is

**FURTHER ORDERED** that plaintiffs' motion for an order barring the implementation of the policy announced in the Perelman Memorandum on August 31, 2001, is **DENIED WITHOUT PREJUDICE**; it is

**FURTHER ORDERED** that a status hearing will be held on **Wednesday, April 17, 2002 at 10:00 a.m.** in **Courtroom One**.

**IT IS SO ORDERED.**

---

4. Contrary to DCPS' reading of *Buckhannon* in the Perelman memo, the DCPS is not required to pay attorneys' fees to settling parents *only* when the fees are a negotiated term of the settlement. Whether or not the fees are a negotiated term is irrelevant to the question of who constitutes a "prevailing party," the question that was before the Court in *Buckhannon*. When the *Buckhannon* Court was referring to "judgment on the merits or a court-ordered consent decree," that Court was referring to the substance of settlement of plaintiff's claims, not to a provision specifying an amount of fees. As discussed above, in order to prevail, and to consequently be entitled to fees, a plaintiff must achieve a change in the substantive legal relationship between parties. Such a change can occur through settlement during either the administrative or judicial phase. Neither *Buckhannon*, nor any other Supreme Court precedent requires that the parties negotiate the fee amount in order to be considered "prevailing" when settling their substantive claims.