Craig and Nancy MURPHY in their own right and as parents of Bethany Murphy, Petitioners,

v.

THE GIRARD SCHOOL DISTRICT, Respondent.

No. Civ.A. 99–199 Erie.

United States District Court, W.D. Pennsylvania.

June 11, 1999.

Thomas A. Pendleton, MacDonald, Illig, Jones & Britton, Erie, PA, for Petitioners.

George Joseph, Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, PA, for Respondent.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

Petitioners, Craig and Nancy Murphy, filed a Petition for Attorneys Fees [1] pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(e)(4)(B), as amended, 20 U.S.C. § 1415(i)(3)(B), ("IDEA").[2] The Respondent, Girard School District, opposes the Petition and argues that the Petitioners are not a "prevailing party" under the Act, and that the Petition is barred by the statute of limitations.

### I. BACKGROUND [3]

Bethany was a middle school student in the Girard School District. In the Spring of 1995, the Petitioners requested that she be evaluated to determine whether she needed special education services. This evaluation was conducted by the District, but the Petitioners disagreed with the findings and requested the District to provide an independent evaluation. This request was denied by the District. Thereafter, the District initiated a due process hearing regarding Bethany's educational placement. Petitioners also initiated a due process hearing to determine Bethany's eligibility for special education services. Prior to the hearing, Petitioners had Bethany evaluated by various clinicians at different locations at their own expense.

The due process hearing was held over several sessions beginning on February 20,

1. Petitioners filed this document on June 11, 1999. [Doc. No. 1]. On June 18, 1999, Petitioners also filed a Complaint. [Doc. No. 2]. These two documents are in substance the same, except all exhibits are attached to the Petition. Although we refer to the "Petition" throughout our Opinion, our Opinion also includes and disposes of the Complaint.

2. Such provision states:
   **(B) Award of attorneys' fees**

In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.
20 U.S.C. § 1415(i)(3)(B).

3. The recitation set forth in this section is derived largely from Exhibits A, B and C attached to the Petition.

1996 and ending April 2, 1996. The hearing officer concluded that Bethany was not exceptional and in need of special education, and denied the Petitioners request for reimbursement of the expenses incurred for the evaluations. The Petitioners filed exceptions to the hearing officer's decision. The Special Education Due Process Appeals Panel of the Commonwealth of Pennsylvania[4] held that Bethany was not gifted but did have a learning disability. The panel also held that Bethany did not need special education services, provided the District continued to make appropriate accommodations. The panel additionally ordered reimbursement for the independent evaluations.

Both parties appealed the panel's decision to the Commonwealth Court of Pennsylvania. By order dated May 19, 1997, the Commonwealth Court held that Bethany did have a learning disability, but no special education placement was warranted. The court also held that although the criteria for reimbursement was only partially applicable to the facts of the case, the most "equitable resolution" would be to reimburse the Petitioners for one of the evaluations.

On June 11, 1999, the Petitioners filed their Petition for Attorneys Fees in this Court, seeking an award of attorneys fees in the amount of $20,074.05, and costs in the amount of $256.96.

## II. DISCUSSION

### A. Statute of limitations

Prior to reaching the merits of the claim for fees, we must determine whether the action is barred by the statute of limitations. IDEA does not establish a statute of limitations for an action seeking either judicial review of an administrative proceeding or for an application seeking attorneys' fees. *Zipperer v. School Board of Seminole County, Florida*, 111 F.3d 847 (11th Cir.1997). "[W]hen Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (citations omitted).

The issue of which statute of limitations should be applied to an action for attorneys fees pursuant to IDEA has not been decided by the Third Circuit. The Third Circuit has however, examined the limitations issue in the context of an action seeking review of an administrative decision pursuant to 20 U.S.C. § 1415(e)(2), as amended, 20 U.S.C. § 1415(i)(2)(A).[5] In *Tokarcik v. Forest Hills School District*, 665 F.2d 443 (3rd Cir.1981), *cert. denied sub nom., Scanlon v. Tokarcik*, 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982), the parents instituted an action to obtain catheterization services for their daughter ninety days after the state agen-

---

4. The Special Education Due Process Appeals Panel is an appeal board established by the Department of Education of the Commonwealth of Pennsylvania pursuant to 22 Pa. Code § 14.64(a).

5. This provision provides:

(2) **Right to bring civil action**

(A) **In general**

Any party aggrieved by the findings and decision made under subsection (f) or (k) of this section who does not have the right to an appeal under subsection (g) of this section, and any party aggrieved by the findings and decision under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A).

cy rendered its decision on the merits. The main issue on appeal was whether the action was timely filed. In rejecting the thirty day limitations period that governs appeals from administrative decisions, the court found persuasive the reasoning set forth in *Monahan v. State of Nebraska*, 491 F.Supp. 1074 (D.Neb.1980), *aff'd in part, rev'd and remanded in part on other grounds*, 645 F.2d 592 (8th Cir.1981). Specifically, the court recognized that the standard of judicial review is more akin to a de novo review as opposed to a limited examination of the administrative record. As a result, different time considerations, accommodating the needs of the parties to investigate and prepare, govern the limitations period for an action brought under the statute. *Tokarcik*, 665 F.2d at 451. Secondly, a limited appeals period would restrict the range of issues a reviewing court could consider and would effectively dilute the independent position of the district courts. *Id.* Finally, the thirty day limitations period would frustrate the statutory policy of cooperative parental and school involvement in placement determinations. *Tokarcik*, 665 F.2d at 452. The court reasoned that the thirty day limitations period is simply "incompatible" with too many objectives of the Act. *Id.* Because the parents action was instituted ninety days after the agency decision, the court did not decide whether Pennsylvania's two-year or six-year statute should apply. In dicta however, the court stated "[f]or purposes of cases brought in district courts situated in Pennsylvania it would appear that the two-year state statute of limitations, . . . is an appropriate referent." *Tokarcik*, 665 F.2d at 454.

The Third Circuit has also addressed the limitations issue in a different context under IDEA in the case of *Bernardsville Board of Education v. J. H.*, 42 F.3d 149 (3rd Cir.1994). In *Bernardsville*, the issue was whether the parents timely requested

a due process hearing in order to recover reimbursement for tuition and expenses for J. H.'s private education. The court adopted a "reasonable time" standard for initiation of review proceedings and stated "[w]e think more that two years, indeed, more than one year, without mitigating excuse, is an unreasonable delay." *Bernardsville*, 42 F.3d at 158. The court further stated:

> "[G]iven the Act's lack of specificity on the question of timeliness and the nature of the issue here, a balancing of the equities is unavoidable. We resort to the standard of reasonableness under the circumstances, and a consideration of mitigating circumstances for any delay in the initiation of review proceedings which might otherwise be deemed unreasonable."

*Bernardsville*, 42 F.3d at 158, n. 14.

At this point, a more in-depth analysis of the district court's opinion in *Bernardsville* is appropriate. In *Bernardsville Board of Education v. J. H.*, 817 F.Supp. 14 (D.N.J. 1993), *aff'd in part, vacated in part*, 42 F.3d 149 (3rd Cir.1994), two issues were before the district court: 1) the appropriate time period in which to request a due process hearing; and 2) the appropriate limitations period for filing an action in court seeking review of an administrative decision pursuant to 20 U.S.C. § 1415(e)(2). The Board moved for summary judgment on the first issue, that being whether the parents timely requested a due process hearing, and in denying the motion, the court declined to impose the 90–day time limit for disputing an individualized educational program (IEP) to a request for a due process hearing. *Bernardsville*, 817 F.Supp. at 19. As to the second issue, the parents moved for summary judgment on the ground that the Board's action filed in federal court seeking review of an administrative decision

under 20 U.S.C. § 1415(e)(2) was untimely. Following the opinion in *Tokarcik v. Forest Hills School District*, 665 F.2d 443 (3rd Cir.1981), *cert. denied sub nom., Scanlon v. Tokarcik*, 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982), the court denied the parents motion and held that the two-year or six-year limitations period applied. *Bernardsville*, 817 F.Supp. at 18. Once the district court ruled on the merits, the Board then appealed the matter to the Third Circuit. Among other issues, the Board appealed the district court's denial of its motion for summary judgment. *Bernardsville*, 42 F.3d at 156. Apparently, the parents did not cross-appeal the denial of their motion for summary judgment on the issue relating to the statute of limitations for filing an action seeking review of an administrative decision under 20 U.S.C. § 1415(e)(2). Therefore, the *only* limitations issue before the Third Circuit on appeal was whether the parents were timely in requesting a due process hearing. As to this issue, the court adopted the "reasonable time" standard. *Bernardsville*, 42 F.3d at 158.

The court in *Bernardsville* therefore did not rule on the limitations issue as it related to filing an action under 20 U.S.C. § 1415(e)(2), and only addressed limitations in the context of requesting a due process hearing. Thus the Third Circuit's opinions in *Bernardsville* and *Tokarcik* addressed two different issues. However, neither opinion addressed the appropriate statute of limitations to be applied in the context of an application for attorneys' fees.

One Pennsylvania district court since *Tokarcik* and *Bernardsville* has addressed the limitations issue in the context of an application for attorneys fees, but did not decide which period applied. *See Ivanlee J. v. Wilson Area School District*, No. 97–683, 1997 WL 164272 (E.D.Pa. April 3,

1997). Citing *Tokarcik*, the court noted that the proper limitations period "is at least two years and may be as long as six years." *Ivanlee*, 1997 WL 164272 at *2. The court did not discuss whether the reasoning set forth in *Tokarcik* is applicable in the context of an application for attorneys' fees.

A New Jersey district court has addressed the issue and examined both the *Tokarcik* and *Bernardsville* opinions. In *B.K. v. Toms River Board of Education*, 998 F.Supp. 462 (D.N.J.1998), the parent argued that the court should apply the *Tokarcik* decision to the fee application and find that it is governed by the New Jersey two-year statute of limitations. The Board requested the court apply the 45–day limitations period applicable to New Jersey administrative appeals. In analyzing *Tokarcik*, the court found it inapposite, since *Tokarcik* only addressed the applicable statute of limitations in the context of an action brought pursuant to § 1415(e)(2). *B.K.*, 998 F.Supp. at 470. Turning to other jurisdictions for guidance, the court was persuaded by the reasoning of the Eleventh Circuit in *Zipperer v. School Board of Seminole County*, 111 F.3d 847 (11th Cir.1997) in adopting a longer limitations period in the context of a fee application. The *Zipperer* court found that the adoption of a longer statute of limitations in a fee context was not inconsistent with the policies of IDEA. The court reasoned that the resolution of claims for attorneys' fees is less urgent and is more likely to be resolved by the attorneys' own interest in prompt payment rather than by a short limitations period. *Zipperer*, 111 F.3d at 851. The *B.K.* court reasoned that a longer limitations period would allow enough time for the parties to attempt to agree on the issue, and would encourage parental involvement. *B.K.* 998 F.Supp. at 471.

The court then examined the Third Circuit's opinion in *Bernardsville*. The court recognized that the Third Circuit reached its conclusion concerning the reasonableness of the time period because of the "unique considerations" presented by a claim for retroactive reimbursement based upon the inappropriateness of the school district's proposed IEP. *B. K.,* 998 F.Supp. at 472. The court adopted the Third Circuit's balancing of the equities approach, and determined that the parent's application for attorneys' fees was made within a reasonable time since it was made within two years of the entry of the settlement between the parties. *B. K.,* 998 F.Supp. at 473.

While we agree with the reasoning in *B.K.* favoring a longer limitations period, we are of the opinion that *Tokarcik* provides greater guidance in the context of a fee application since *Tokarcik* addressed the limitations issue in the context of a post-administrative action, while *Bernardsville,* addressed the issue in the context of the appropriate time frame in which to initiate the administrative process prior to filing a lawsuit. Given our conclusion that *Tokarcik* is more closely aligned to the facts of this case, we do not believe it is necessary to engage in a "balancing of the equities" approach, since *Tokarcik* did not suggest such approach was necessary in a post-administrative situation.

■ The court in *Tokarcik* did not specifically decide the appropriate limitations period, but strongly suggested it would be at least two years. *Tokarcik,* 665 F.2d at 454. We too, however, need not decide this issue in order to dispose of the instant Petition. Following the lead of *Tokarcik,* we conclude only that the limitations period is at least two years. The Commonwealth Court order is dated May 19, 1997 and became final on June 18, 1997. *See McCartney C. v. Herrin Community Unit School District No.4,* 21 F.3d 173, 175 (7th Cir.1994) (decision becomes final upon exhaustion of all judicial remedies and suit for fees would be premature until then).[6] The Petitioners thus had until June 18, 1999 in which to file the instant action. Since the Petition was filed on June 11, 1999, we are of the opinion that the Petition was timely filed.

### B. Petitioners eligibility for attorneys' fees

Turning to the substance of the Petition, we must decide whether the Petitioners are entitled to an award of attorneys' fees pursuant to IDEA. The Act provides that a court in its discretion may award attorneys' fees as part of costs to the parents of a child who is a "prevailing party." 20 U.S.C. § 1415(e)(4)(B), as amended, 20 U.S.C. § 1415(i)(3)(B). The issue is whether the Petitioners are a prevailing party.

■ In order to be a prevailing party, the party must succeed on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).[7] The Third Circuit has set forth the standards to be applied in determining whether a party is "prevailing" in an IDEA case. *Wheeler v. Towanda Area School District,*

---

**6.** *Cf. Jeremy H. v. Mount Lebanon School District,* 95 F.3d 272, 280 (3rd Cir.1996) (limitations begins to run once the administrative process has run its course).

**7.** *Hensley* examined this issue in the context of an action pursuant to 42 U.S.C. § 1988.

The court stated that the standards set forth in the opinion are generally applicable in all cases in which Congress has authorized an award of fees to a "prevailing party." *Hensley,* 461 U.S. at 433 n. 7, 103 S.Ct. 1933.

950 F.2d 128 (3rd Cir.1991). Pursuant to *Wheeler*, the court must determine: 1) whether plaintiff's achieved relief; and 2) whether there is a causal connection between the litigation and relief from the defendant. *Wheeler*, 950 F.2d at 131.

■ Whether the plaintiff achieved relief is determined by a commonsense comparison between the relief sought and the relief obtained. *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 910 (3rd Cir.1985). This is a liberal standard; as long as a plaintiff achieves some of the benefit sought, even though he does not ultimately succeed in securing a favorable judgment, a plaintiff can be considered a prevailing party for purposes of a fee award. *NAACP v. Wilmington Medical Center, Inc.*, 689 F.2d 1161, 1166 (3rd Cir.1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983). Applying this standard, the following synopsis is a comparison of the relief sought by the Petitioners at each phase of the litigation against the relief actually obtained:

1. Hearing Officer Report, Exhibit A
   a. The hearing officer categorized the issues as 1) whether Bethany is exceptional and needs special education, and 2) should the parents be reimbursed for the independent examinations.
   b. The parents argued that Bethany 1) was both gifted and learning disabled, and 2) the school evaluation was incomplete because of the lack of current psychological evaluations.
   c. The hearing officer held that 1) Bethany was not exceptional and in need of special education, and 2) reimbursement for the independent evaluations was denied.
2. Appeals Panel Decision, Exhibit B
   a. The panel stated that the two issues before the hearing officer were 1) whether Bethany needed special education services, and 2) whether the parents were entitled to reimbursement for the independent evaluations.
   b. The panel stated "simply put, this case is about whether or not Bethany needs special education services in order to benefit from her educational program."
   c. The panel held:
      1. Bethany was not gifted;
      2. Bethany did have a learning disability *but* did not need special education services provided the District continued to make appropriate accommodations; and
      3. ordered reimbursement for the independent evaluations.
3. Commonwealth Court Opinion, Exhibit C
   a. The parents appealed the panel finding of not gifted and no special education services needed at this time.
   b. The district appealed the panel finding that Bethany had a learning disability and the order for reimbursement. The district argued that it should only have to pay for one evaluation, if any.
   c. The Court held: '
      1. Bethany did have a learning disability, but no special education placement was warranted; and
      2. The criteria for reimbursement was only partially applicable; the evaluations supported the parents contention that Bethany was learning disabled, but were inconclusive as to recommending special education services. The Court felt "the most equitable resolution" would be

to reimburse the parents for one of the evaluations.

■ In summary, the Petitioners sought to compel the Respondent to provide special education services to Bethany, and to provide reimbursement for the five independent evaluations. The Petitioners prevailed on having Bethany labeled as learning disabled, but did not prevail on the special education services issue as a whole. Even though the Petitioners sought the learning disabled diagnosis, the ultimate goal of such a finding was to compel Respondent to provide special education services. This objective was not achieved. The Petitioners did however, achieve some relief on the second issue-reimbursement for *one* of the independent evaluations. Since they achieved some relief, we will examine the second prong of *Wheeler.*

■ The second part of the *Wheeler* analysis is whether there is a causal connection between the litigation and the relief from the defendant. *Wheeler,* 950 F.2d at 131. This causation prong may be established two ways:

1. by obtaining a judgment, consent decree or a settlement that changes the relations of the parties such that the defendant is legally compelled to grant relief; or

2. through a "catalyst" theory, where even though litigation did not result in a favorable judgment, the pressure of the lawsuit was a material contributing factor in bringing about extrajudicial relief.

*Baumgartner v. Harrisburg Housing Authority,* 21 F.3d 541, 546 (3rd Cir.1994).

■ As to the special education issue, the Petitioners argue that the Commonwealth Court's decision was the catalyst of the Northwest Tri County Intermediate Unit declaring Bethany needed special accommodations in the classroom. As indi-

cated earlier, the Petitioners enrolled Bethany in a private school during the midst of the litigation. While this private school may have provided Bethany with special education services, the "pressure of the lawsuit" did not cause the Respondent to do anything differently regarding Bethany's education. In other words, no special education services were provided by Respondent as a result of the lawsuit. The Third Circuit has stated in dicta that the argument that a party should not be held accountable for the benefits given to the opposing party by a third person is not unreasonable and may, in fact preclude recovery of attorneys' fee in some contexts. *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 917 (3rd Cir.1985). Therefore, we are of the opinion that the "catalyst" theory is not applicable to the facts, and the Petitioners are not a prevailing party on this issue.

We reach a different conclusion as to the reimbursement issue. The Petitioners sought reimbursement for five evaluations. They ultimately received reimbursement for only one evaluation. Nonetheless, such award did change the relationship of the parties in that the Respondent is legally compelled to reimburse the Petitioners for the evaluation. Although the Petitioners did not receive all the relief they were seeking, they did receive some of the benefit they sought in the lawsuit. We believe therefore that the Petitioners prevailed on this minor issue and are entitled to prevailing party status.

## C. Amount of attorneys' fees

■ We now turn our attention to the determination of the appropriate amount to be awarded to the Petitioners. Respondent suggests a substantial downward adjustment is necessary due to the Petitioner's limited success on the merits. The starting point for determining the amount

is the calculation of the "lodestar"—the figure obtained by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Public Interest Research Group of New Jersey, Inc. v.* *Windall*, 51 F.3d 1179, 1185 (3rd Cir.1995). The parties have stipulated that the appropriate hourly rate for Attorney Pendleton is $100.00 per hour, and the Respondent has no objection to this hourly rate. The following is our calculation of the basic lodestar amount:

| Name | Position | Hours | Rate | Amount |
|---|---|---|---|---|
| T.A. Pendleton | Attorney | 246.70 | $100.00 | $24,670.00 |
| E.W. Goebel, Jr. | Attorney | 2.3 | $150.00 | $ 322.00 |
| J. Piccone | Sum. Clerk | 3.5 | $ 60.00 | $ 210.00 |
| R. Gross | Sum. Clerk | 17.4 | $ 60.00 | $ 1,044.00 |
| B. Martin | Paralegal | 6.2 | $ 60.00 | $ 372.00 |
| J. Seaman | Paralegal | .9 | $ 60.00 | $ 54.00 |
| M.T. Craig | Paralegal | 6.7 | $ 60.00 | $ 402.00 |
| Total | | 283.70 | | $27,074.00 |

Having determined the basic lodestar amount does not end our inquiry. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. We may look to various factors to adjust the lodestar upward or downward. *Id.* The *Hensley* decision described how a court might adjust the fee lodestar based upon "results obtained." *Id. Hensley* considered this factor critical where "a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* As explained earlier in our opinion, the Petitioners did not prevail on the special education services issue. They did however, achieve limited success on the reimbursement claim. We believe therefore that the lodestar figure should be adjusted downward to reflect a more reasonable amount in light of the results obtained.[8]

Two methods of fee reduction were established by the court. We may attempt to eliminate specific hours spent on the unsuccessful claim or reduce the amount to account for the limited success. *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933. Although we consider the special education issue and the reimbursement issue to be distinct claims, it is difficult if not impossible to segregate the time spent on each. For example, legal research relative to the reimbursement issue is lumped together with other time entries relating to subpoenas and conferences regarding witness lists. Additionally, there are a number of entries that relate to document preparation, hearing preparation and actual attendance at the various proceedings throughout the litigation. We are unable to distinguish how much time was devoted to the reimbursement issue. Simply put,

---

**8.** The Petitioners voluntarily suggest a downward reduction of 30% in Attorney Pendleton's hours to account for duplicative tasks and the Petitioners limited success. We decline to accept this figure as we believe the amount should be substantially reduced.

we are unable to segregate with any reliable certainty the hours spent on the successful claim versus the unsuccessful claim. Consequently, the second method of reduction—reducing the amount of the award to account for the limited success—is the more appropriate method based upon the facts presented.

Our focus in reducing the amount is what is reasonable in relation to the results obtained. *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933; *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 919 (3rd Cir.1985). We reiterate our view that the relief sought and the relief obtained demonstrate that the Petitioners achieved very limited success. An examination of the administrative opinions, the Commonwealth Court opinion and the time entries recorded on the fee statement reveal that the primary objective of the Petitioners, and therefore the most significant legal effort, was to secure special education services for their daughter. Further, with respect to reimbursement, the Petitioners did not completely prevail. They sought reimbursement for five evaluations and received reimbursement for only one in the amount of $760.00. Under the circumstances, a substantial downward adjustment of the lodestar figure is warranted. Accordingly, will reduce the lodestar figure of $27,074.00 by 85%, yielding a figure of $4,061.10. We are of the opinion that this amount represents a reasonable amount in light of the limited success of the Petitioners.

■ The Petitioners have also requested that they be awarded costs in the amount of $256.96. Since we have held that the Petitioners are a "prevailing par-

ty" for the purpose of a fee award, we also consider them to be prevailing for the purpose of an award of costs. *Institutionalized Juveniles,* 758 F.2d at 926. Therefore, Petitioners shall be awarded their costs.

## III. CONCLUSION

As an initial matter, we have determined that the Petitioner's Petition for attorneys' fees pursuant to 20 U.S.C. § 1415(e)(4)(B), as amended, 20 U.S.C. § 1415(i)(3)(B) was timely filed. We have also determined that the Petitioner's are a "prevailing party" under the Act and are entitled to attorneys' fees. However, since the Petitioners achieved limited success, we have adjusted the award downward to reflect what is reasonable in relation to the results obtained.

An appropriate order follows.[9]

### *ORDER*

AND NOW, this—day of March, 2000, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Petitioner's Petition for Attorneys' Fees [Doc. No. 1] is GRANTED, and Petitioners are awarded attorneys' fees and costs in the total amount of $4,318.06.[10]

JUDGMENT is hereby entered in favor of Petitioners, Craig and Nancy Murphy.

---

9. The Petitioners also sought attorneys' fees pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794a. This claim does not appear to have been litigated in any of the proceedings below; therefore we decline to address whether the Petitioners are entitled to attorneys' fees pursuant to this claim.

10. This order also includes and disposes of the Complaint [Doc. No. 2].