**Katheryn KASEMAN, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**No. CIV.A. 03–1858 ESH.**

United States District Court, District of Columbia.

July 7, 2004.

Donna Lee Wulkan, Washington, DC, for Plaintiffs.

Melvin W. Bolden, Jr., Office of the Corporation Counsel, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiffs are forty-two minor children and their parents or guardians who seek attorney's fees, costs, and both pre- and post-judgment interest relating to their successful administrative actions under the Individuals With Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.* They have filed for summary judgment against the District of Columbia and the Superintendent of the District of Columbia Public Schools (collectively "DCPS") for attorney's fees and costs under IDEA and 42 U.S.C. §§ 1983 and 1988. They also seek a declaratory judgment ordering DCPS to reimburse future prevailing parties who are represented by plaintiffs' attorney herein for attorney's fees within forty-five days of submission of their invoices. For the reasons set forth below, plaintiffs will be awarded the requested attorney's fees, costs and interest under section 1415(i)(3)(B) of IDEA, but are not entitled to a declaratory judgment or to a fees award pursuant to 42 U.S.C. § 1983.

## BACKGROUND

IDEA guarantees all children with disabilities "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). As a condition of receiving federal funds under the Act, IDEA requires school districts to adopt procedures to ensure appropriate educational placement of disabled students

and to develop comprehensive plans for meeting the special educational needs of these students. *See* 20 U.S.C. §§ 1413, 1414(d)(2)(A). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an "impartial due process hearing," 20 U.S.C. §§ 1415(b)(6), (f)(1), where they have a "right to be accompanied and advised by counsel." 20 U.S.C. § 1415(h)(1).

Parents who are "aggrieved by" a hearing officer's decision may bring a civil action in either state or federal court. 20 U.S.C. § 1415(i)(2). IDEA gives courts the authority to "award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party" in any action brought under the Act. 20 U.S.C. § 1415(i)(3)(B). It is well-established in this Circuit that section 1415(i)(3)(B) also authorizes a parent who prevails in an IDEA administrative hearing to recover attorney's fees by filing suit for the fees in federal court. *See Moore v. Dist. of Columbia*, 907 F.2d 165, 176 (D.C.Cir.1990); *Holbrook v. Dist. of Columbia*, 305 F.Supp.2d 41, 44 (D.D.C. 2004). And, although Congress has placed a cap on the amount of attorney's fees the District of Columbia can pay lawyers of parents who prevail in IDEA actions and proceedings, the D.C. Circuit has held that

courts can still award attorney's fees above the statutory cap despite DCPS's lack of authority to pay them.[1] *Calloway v. Dist. of Columbia*, 216 F.3d 1, 9 (D.C.Cir.2000).

This suit encompasses fifty-two fee petitions for forty-two minors, all of whom were represented by attorney Donna Wulkan and prevailed at their separate administrative due process hearings during 2002–2004. Each plaintiff submitted detailed documentation to DCPS listing the attorney's fees and costs they incurred in an attempt to obtain reimbursement from DCPS instead of seeking a court-ordered fee award. In response to twenty-nine of the invoices, DCPS provided partial payment, often accompanied by a "disputed items" list setting forth its objections to specific items as to which it refused to make payment. For the other twenty-three invoices, DCPS neither paid nor responded. Plaintiffs have filed suit to collect their outstanding fees and costs in the amount of $352,714.58.

DCPS does not dispute that each plaintiff is a prevailing party entitled to an award of reasonable attorney's fees. Nor does it deny that it has not paid, or has only partially paid, the fee requests submitted by plaintiffs. Instead, it argues that many of plaintiffs' claims for fees are

---

1. The statutory cap on attorney's fees first appeared in Section 130 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub.L. No. 105–277, 112 Stat. 2681 (1998). Similar caps were instituted for fiscal year 2000 and 2001, and a cap was in effect in 2003 pursuant to Section 144 of the Consolidated Appropriations Resolution, Pub.L. No. 108–7, 117 Stat. 132 (2003), restricting the District's ability to pay attorney's fees for a single action to no more than $4,000. An identical cap has been instituted for 2004. *See* Consolidated Appropriations Act for 2004, Pub.L. No. 108–199, 118 Stat. 141 § 432 (2004).

The District of Columbia Appropriations Act of 2002, Pub.L. No. 107–96, 115 Stat. 958

§ 140 (2002), however, does not appear to contain a fee cap, but instead limited fee payments only for fees previously capped by earlier Appropriation Acts. Plaintiffs assume that the absence of a cap in 2002 requires the District to pay the full amount of attorney's fees awarded that were incurred in 2002, even though they are requesting such fees now, when the cap has been reinstituted. DCPS does not even address this issue or dispute this assumption, but because the caps do not limit the Court's ability to order payment of the full amount, the Court will not address whether this assumption is legally correct.

barred by the statute of limitations, and further it complains that the hourly rate charged by plaintiffs' attorney is excessive, that many of the hours expended by plaintiffs' attorney were unreasonable, and that plaintiffs are not entitled to interest on the fees. Finally, it argues that the Court may only award fees under IDEA, these fees are subject to the statutory cap, and plaintiffs cannot evade the cap by invoking 42 U.S.C. § 1983. Each of DCPS's arguments will be considered *seriatim*.[2]

## ANALYSIS

### I. Statute of Limitations

DCPS contends that a majority of plaintiffs' claims should be dismissed for failure to comply with a thirty-day statute of limitations.[3] Because IDEA contains no statute of limitations, the Court must import a limitations period from an analogous state cause of action. *See Spiegler v. Dist. of Columbia*, 866 F.2d 461, 463–64 (D.C.Cir. 1989). DCPS proposes that the thirty-day limitation period applicable in this jurisdiction to petitions to review agency decisions should be applied to fee petitions. Although the D.C. Circuit has not directly addressed this issue, DCPS cites *Spiegler*, in which the Court enforced a thirty-day limitation for the filing of an appeal of a substantive determination under the IDEA, and argues that although "this case involves claims for attorneys fees and not a substantive appeal from an administrative decision" (Supp. Opp. at 2), a similar limitation should apply.

Two circuits have agreed with DCPS's position, holding that actions seeking attorney's fees are ancillary to the underlying administrative proceedings and are therefore subject to state law limitation

2. In their reply in support of their motion, plaintiffs argue that they are entitled to summary judgment because DCPS has failed to comply with the requirement that it oppose the motion for summary judgment with "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Indeed, DCPS's "Statement of Material Facts as to Which There are Genuine Issues" contains only boilerplate denials that the amount claimed outstanding is owed, and unsubstantiated allegations that each plaintiff's fee request is "not a reasonable sum for the attorney's fees and costs incurred on behalf of [plaintiff]" in contravention of LCvR 56.1's requirement that the statement set forth material facts in dispute with "references to the parts of the record relied upon to support the statement." Because of these deficiencies, the Court will address DCPS's legal arguments assuming that the facts plaintiffs have identified in their Statement of Material Facts as to Which There is no Genuine Issue, which are supported by counsel's affidavit and exhibits, are admitted by DCPS. *See* LCvR 56.1.

3. DCPS raised this argument, not in its opposition, but in a "Supplement to Opposition to Plaintiff's Motion for Summary Judgment and Memorandum of Support of Motion of the Defendants to Dismiss Certain Claims of the Complaint." Plaintiffs object to this motion and supplement as untimely and have moved to strike them. At the April 1, 2004 status conference, the Court set down a briefing schedule for plaintiffs' summary judgment motion, requiring it to be filed by April 15, 2004. DCPS did not indicate its intention to file a motion to dismiss at the status conference (or at any other time), and filed its motion on May 28, 2004—four days before plaintiffs' reply in support of their summary judgment motion was due. Plaintiffs therefore request that the motion to dismiss be stricken because it was filed after the time period for filing dispositive motions had expired. Plaintiffs likewise object to the submission of a "supplemental opposition" four days after the deadline for DCPS's opposition. The Court appreciates plaintiffs' frustration with DCPS's persistent disregard of the Scheduling Order. However, because the Court finds DCPS's statute of limitations argument to be lacking in merit, as well as having been untimely filed, it will deny the motion to dismiss and will deny as moot plaintiffs' motion to strike.

periods for judicial review of administrative agency decisions. *See, e.g., King v. Floyd County Bd. of Educ.,* 228 F.3d 622, 627 (6th Cir.2000); *Powers v. Ind. Dep't of Educ.,* 61 F.3d 552, 558 (7th Cir.1995). These courts have found that importing the short limitation period common to administrative appeals is consistent with IDEA's goal of encouraging the expeditious resolution of matters regarding disabled students' educational needs. *See id.*

Other courts, however, have distinguished between the substantive cause of action brought under section 1415(i)(2)(A) of IDEA and a claim for attorney's fees brought under section 1415(i)(3)(B) for purposes of borrowing an appropriate statute of limitations. *See Zipperer v. Sch. Bd. of Seminole County, Fla.,* 111 F.3d 847, 851 (11th Cir.1997); *see also Ostby v. Oxnard Union High,* 209 F.Supp.2d 1035, 1044–45 (C.D.Cal.2002); *Murphy v. Girard Sch. Dist.,* 134 F.Supp.2d 431, 436 (W.D.Pa.1999); *Shanahan v. Bd. of Educ. of Jamesville–Dewitt Sch. Dist.,* 953 F.Supp. 440, 443 (N.D.N.Y.1997). In *Zipperer,* the Eleventh Circuit held that an independent action for attorney's fees is not analogous to the appeal of an agency determination. 111 F.3d at 852. It reasoned that while a short limitation period is appropriate for substantive appeals in order to ensure prompt resolution of disputes regarding appropriate educational accommodations, a longer limitation period should apply to attorney fee petitions in order to best achieve IDEA's goal of providing quality legal representation to parents and guardians of disabled children. *Id.*

■ Distinguishing *Spiegler* and following *Zipperer,* two district courts in this jurisdiction have borrowed the three-year statute of limitations provided by D.C.Code § 12–310(8), which applies to causes of action "not otherwise specifically prescribed," for IDEA attorney fee actions. *See Akinseye v. Dist. of Columbia,* 193 F.Supp.2d 134, 144–45 (D.D.C.2002), *rev'd on other grounds,* 339 F.3d 970, 971–72 (D.C.Cir.2003); *Smith v. Dist. of Columbia,* No. 02–0373, slip. op. at 5–7 (D.D.C. Sept. 19, 2002). Finding the reasoning of *Zipperer* to be persuasive, this Court will also apply the three-year statute of limitations. Because district courts have the exclusive jurisdiction to award attorney's fees under section 1415(i)(3)(B) of IDEA, an action for attorney's fees is not akin to an appeal from an administrative decision, and thus, importing the statute of limitations for appeals would be inappropriate. A longer limitation period, moreover, provides a more realistic opportunity for the negotiation and settlement of fee petitions, thereby hopefully minimizing the need to turn to federal courts with unnecessary, and often burdensome, attorney fee litigation.[4] Therefore, applying the three-year statute of limitations provided by D.C.Code § 12–310(8), the Court concludes that plaintiffs' claims are not time-barred.

## II. Reasonableness of Rates Charged

Under IDEA, the amount of fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). Courts in this Circuit have found rates charged by attorneys in IDEA actions to be reasonable if they conform to the United States Attorney's Office's *Laffey* Matrix. *See, e.g., Whatley v. Dist. of Columbia,* 224 F.Supp.2d 62, 66–67 (D.D.C.2002); *Blackman v. Dist. of*

---

4. If a thirty-day rule were to be applied, the administrative process in existence could not even be used because of the limited time available. *See* note 8, *infra.*

*Columbia*, 59 F.Supp.2d 37, 44 (D.D.C. 1999).

■ For work completed between June 1, 2001 and May 31, 2002, the *Laffey* Matrix indicates that attorneys with Ms. Wulkan's level of experience could bill $360.00 per hour. During that time, she billed at a rate of $290.00 per hour. (*See* Wulkan Aff. at 2.) For work completed between June 1, 2002 and May 31, 2003, the Matrix provides that she could bill $370.00 per hour, which she did. (*See id.*) Her two associates have between one and three years of legal experience and have also billed at rates consistent with the Matrix. (*Id.*)

Despite the use of the *Laffey* Matrix in IDEA cases in the past, DCPS now argues, without any factual or legal support, that plaintiffs inappropriately rely upon the *Laffey* Matrix to "seek fees for their counsel at rates in excess of any rate they should command in the market place." (Opp. at 4.) It claims that plaintiffs "have submitted no affidavits attesting to the actual rates charged by lawyers who do similar work, the complexity of IDEA work, ... and the experience, expertise and reputations of plaintiffs' counsel." (*Id.* at 5.) It therefore argues that the Court "should not mechanically apply the *Laffey* Matrix, but should reduce the *Laffey* Matrix rates by one-third for failure of plaintiffs to meet their burden." (*Id.* at 6.)

Plaintiffs' counsel, however, states that she has been practicing as a child advocate, specializing in special education law, for over twenty years. (*See* Wulkan Aff. at 2.) She was the lead attorney in three complex class-action cases involving public education in the District of Columbia and Maryland, and has taught law at Georgetown and Antioch. (*Id.* at 2–3.) She also states that two consent judgments for IDEA attorney's fees, that reflect her bill-ing of a *Laffey* Matrix rate of $370.00 per hour, were recently signed by a district court judge in this Circuit who agreed that the rate was reasonable. (*See* Pls.' Facts ¶ 19.) [5]

DCPS can challenge "plaintiffs' attorneys' claims as to their competence, experience, reputation, or performance," but they must provide "specific contrary evidence" to rebut the presumption of reasonableness established by plaintiffs and to demonstrate that a lower rate would be appropriate. *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1110–11 (D.C.Cir.1995). Since DCPS has failed to do this and has provided no principled basis for its suggestion that the fees should be slashed by one third, the Court will award rates consistent with the *Laffey* Matrix.

## III. Reasonableness of Time Spent on Particular Tasks

■ Plaintiffs may satisfy their burden of demonstrating that the number of hours expended on particular tasks was reasonable by submitting invoices that are sufficiently detailed to "permit the District Court to make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C.Cir.1982); *see also Cobell v. Norton*, 231 F.Supp.2d 295, 305 (D.D.C.2002). To be sufficient, the invoices "need not present 'the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" *Concerned Veterans*, 675 F.2d at 1327 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980)).

DCPS objects to plaintiffs' fee requests for two reasons. First, it claims that plaintiffs' charges for fees and costs are "inadequately documented," and second, it

5. Significantly, the defendant in this case en- tered into these two consent judgments.

asserts that plaintiffs' counsel has failed to establish that she has exercised "billing judgment." (Opp. at 7.) DCPS concludes, again without any principled basis for its proposed reduction, that because of these deficiencies, "plaintiffs' overall fee request should be reduced by 15%." (*Id.* at 8.)

■ DCPS cites *In re Olson*, 884 F.2d 1415, 1428 (D.C.Cir.1989), to support its conclusion that plaintiffs' fee petitions are inadequately documented. (*See* Opp. at 8–9.) There, " 'multitudinous billing entries' " that " 'wholly fail to state or to make any reference to the subject discussed at a conference, meeting or telephone conference' " were found insufficient to warrant an award of attorney's fees. (*Id.* (quoting *In re Olson*, 884 F.2d at 1428).) But even a cursory review of plaintiffs' submissions (which DCPS has apparently not taken the trouble to do) confirms that they are far from inadequate. On the contrary, plaintiffs have done exactly what DCPS demands. Ms. Wulkan has submitted time records for each plaintiff, detailing each specific task performed and its subject matter, the hours she or her colleagues spent on each task (calculated in tenth-hour increments), and the date of each task. (*See* Compl. Ex. 1B–53B.) Thus, the Court can determine, with "a high degree of certainty," the amount of time billed for discrete activities. *Id.* at 1428–29.[6]

Plaintiffs' counsel, moreover, has demonstrated more than adequate "billing judgment" by "carefully review[ing] every invoice to assure that any duplicative work

or excessive charges were removed before the bill was submitted," and omitting many billable entries. (Reply at 12.) For example, she states that "though two attorneys attend virtually every due process hearing, counsel only bills for one attorney's time." (*Id.*) Likewise, "counsel does not bill for travel time to and from the hearings and does not bill for time spent preparing and reviewing attorney fee invoices." (*Id.*)

The reasonableness of Ms. Wulkan's billing is well-documented by the detailed letters she sent to DCPS setting out her explanation for each invoice entry in dispute. (*See* Compl. Ex. A–EE.) DCPS often objected to invoice entries as "excessive time billed," "duplication," "non-professional work," or "internal consultation." (*See, e.g., id.* Ex. I.) Ms. Wulkan responded to each of these disputes, explaining why the enumerated task was necessary to the provision of competent representation of her clients and why the time spent was appropriate in each particular circumstance. (*See, e.g., id.* Ex. CC.) These letters demonstrate that DCPS's boilerplate criticisms of Ms. Wulkan's invoices are "of the 'nit-picking' variety" that are inappropriate for the agency to make. *See Holbrook v. Dist. of Columbia*, 305 F.Supp.2d 41, 46 (D.D.C.2004) (quoting *Concerned Veterans*, 675 F.2d at 1337–38) (Tamm, J., concurring). As in *Holbrook*, DCPS's objections amount to nothing more than conclusory assertions of the amount of time that it thinks plaintiffs' counsel "should have spent" on certain tasks, a role that neither DCPS nor this Court

---

6. DCPS implies that because the Court must review plaintiffs' fee petitions for reasonableness *de novo*, "plaintiffs' reliance on their submissions to the agency are improper within the context of the request for fees to this court" and thus their showing before the Court is inadequate. (Defs.' Facts ¶ 12.) *De novo* review, however, does not preclude plaintiffs from relying on the invoices they

have already submitted to DCPS. Plaintiffs' counsel has appended her invoices and explanations to her affidavit, and the contention that plaintiffs' counsel must *regenerate* the invoices for the Court's purposes is simply preposterous, especially since it would invite needless duplication of effort and unnecessary expense that must ultimately be borne by the District's taxpayers.

should play. *See Holbrook*, 305 F.Supp.2d at 46 (quoting *Copeland*, 641 F.2d at 903) ("It is neither practical nor desirable to expect the trial court judge to [review] each paper ... to decide, for example, whether a particular motion could have been done in 9.6 hours instead of 14.3 hours.").

Accordingly, the Court is more than satisfied that the hours Ms. Wulkan and her colleagues spent on particular tasks are eminently reasonable, and therefore, it will award the full amount of fees and costs that plaintiffs have requested.[7]

## IV. Pre- and Post-judgment Interest

Plaintiffs also seek pre- and post-judgment interest on the award granted by the Court. Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court ... from the date of the entry of the judgment." 28 U.S.C. § 1961(a). Post-judgment interest is appropriate when a district court enters a judgment awarding reasonable attorney's fees under IDEA. *See Akinseye*, 339 F.3d at 972; *Holbrook*, 305 F.Supp.2d at 48.

Whether pre-judgment interest is to be awarded, however, is "subject to the discretion of the court and equitable considerations." *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C.Cir.1997) (quoting *Motion Picture Ass'n of Am., Inc. v. Oman*, 969 F.2d 1154, 1157 (D.C.Cir. 1992)). The purpose of such awards is to compensate the plaintiff for any delay in payment resulting from the litigation. *See id.* (citing *Motion Picture Ass'n*, 969 F.2d at 1157 ("interest compensates for the time value of money and thus is often necessary for full compensation")). The prime rate—"the rate that banks charge for short-term unsecured loans to credit-worthy customers"—is an appropriate measure of pre-judgment interest. *Oldham*, 127 F.3d at 54.

The Court finds that pre-judgment interest is appropriate here. DCPS's refusal to reasonably settle plaintiffs' attorney's fees requests has forced plaintiffs' counsel to struggle, in some instances for longer than two and a half years to obtain payment for her services. Since September 2003, DCPS has completely stonewalled requests for payment,[8] and before

---

7. An award of costs for copying, faxing and postage was entered in *Holbrook*, 305 F.Supp.2d at 46. Although DCPS objects to the award of costs because of counsel's failure to document that these charges were reasonable and necessary, the costs sought here are customarily included in fees awards, *see id.*, and as far as can be determined by this Court, the costs appear reasonable on their face. Therefore, defendant's vague objections to the award of costs is overruled.

8. DCPS suggests that its refusal to pay plaintiffs' invoices is not improper because plaintiffs may—and indeed should—come to the Court in the first instance to request attorney's fees under IDEA after prevailing at an administrative hearing. This suggestion is certainly troubling and short-sighted. DCPS itself acknowledges (*see* Opp. at 2 n. 3.) the extreme inefficiencies created when it fails to

reasonably settle plaintiffs' fee requests. For, as DCPS concedes, "[i]t is grossly wasteful of the Court's time and resources when parties do not utilize DCPS as an initial screener. Ignoring DCPS payment processes literally invites hundreds of new IDEA fee processing cases where the Court will not be familiar with the substantive administrative proceedings on which the fee requests are based." (*Id.*)

In fact, Title V of the District of Columbia Municipal Regulations provides that "[a]ll requests for attorneys' fees by parents who have prevailed against DCPS in actions brought under IDEA shall be submitted within forty-five (45) days of the issuance of the hearing decision in which the child, parent, or guardian prevailed or execution of a settlement agreement requiring the payment of such fees." D.C. Mun. Regs. tit. V, § 3024.1. This regulation certainly contemplates that DCPS

that date, it presented reasons for rejecting requests that often bordered on the absurd.[9] As the Court in *Holbrook* noted, "unreasonable penny-pinching scrutiny, such as [DCPS] has engaged in here produces serious chilling effects on the availability of competent, experienced attorneys to serve this clientele .... Certainly [DCPS] should not discourage lawyers who do such important work by failing to pay them for their services in a timely fashion." 305 F.Supp.2d at 48.

For these reasons, the Court will award the full amount of fees and costs requested, as well as pre-judgment interest at the prime rate on each award and post-judgment interest at the statutory rate for any balance owing 31 days from the date of this Order.

## V. Claim for Attorney's Fees under Section 1983

Because of the cap imposed on the funds the District can pay to cover attorney's fees awarded by courts under IDEA, plaintiffs have invoked 42 U.S.C. § 1983 in an attempt to recover an uncapped attorney's fees award.[10] Additionally, because IDEA does not provide for declaratory judgments, plaintiffs request this relief under section 1983. Plaintiffs claim that section 1983 applies here because they are "enforcing their right to reasonable attorneys' fees under the IDEA and seeking relief for a systematic civil rights violation." (Mot. at 15.) Plaintiffs claim that DCPS's "unreasonable resistance to reimbursement," through repeatedly failing to pay invoices plaintiffs have submitted after successful administrative hearings, delaying payment for excessive periods of time,

---

should endeavor to settle attorney's fees before forcing the plaintiffs to resort to litigation—which, of course, causes plaintiffs to incur even more fees that the District and its taxpayers will inevitably have to cover.

9. The letters Ms. Wulkan sent to DCPS setting out her explanation for the invoice entries in dispute highlight the frivolousness of many of DCPS's objections. For example, in one instance DCPS reduced the 2.5 hours Ms. Wulkan spent at a due process hearing to 1.5 hours as "excessive," even though DCPS itself participated in the hearing for the full 2.5 hours. (*See* Compl. Ex. CC at 4.) In another instance, DCPS refused to pay for what it characterized as "internal consultations" that were in fact telephone conferences with the client, school officials, experts and potential witnesses. (*See id.* Ex. AA.) Had these interviews not been conducted, Ms. Wulkan states, she would be breaching her duty to her client by presenting a case fully unaware of the issues involved in the case. (*See id.*) As another example, DCPS refused to pay for counsel's attendance at an IEP meeting, claiming that the fees are not reimbursable IDEA. (*See* Supp. Opp. at 9.) While section 1415(i)(3)(D)(II) precludes reimbursement for attendance at most IEP meetings, it exempts

those meetings that are convened pursuant to a settlement agreement or hearing officer's determination, and as plaintiff's counsel explained and as is obvious from the record, that exemption applied in the circumstances presented. (*See* Compl. Ex. 20A.) These are just a representative sample of DCPS's arbitrary and unreasonable fee denials.

The lack of merit in DCPS's position is further demonstrated by the often ill conceived, if not contradictory, positions taken by DCPS during the course of this litigation. For instance, in its Motion to Dismiss, DCPS often disputes a plaintiff's request on the grounds that "plaintiffs have failed to exhaust remedies available to them. Therefore, this matter should be remanded to the agency." (*See, e.g.*, Mot. to Dismiss at 8.) But, in its Opposition to Plaintiffs' Motion for Summary Judgment, it inexplicably observes just the opposite—"[n]either the IDEA nor applicable regulations require exhaustion of an administrative remedy by prevailing parties prior to seeking attorneys' fees." (Opp. at 2 n.3.)

10. In an action brought pursuant to 42 U.S.C. § 1983, the Court, in its discretion, "may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

and irrationally reducing payment, amounts to a pattern and practice of frustrating plaintiffs' right to attorney's fees. (*Id.*)

Relying upon section 1415(*l*) of IDEA, which provides that "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution ... or other Federal laws protecting the rights of children with disabilities ...," courts in this jurisdiction have recognized that IDEA violations can serve as a predicate for a section 1983 claim. *See Johnson v. Dist. of Columbia*, 190 F.Supp.2d 34, 46–47 (D.D.C.2002); *Zearley v. Ackerman*, 116 F.Supp.2d 109, 114 (D.D.C.2000); *Walker v. Dist. of Columbia*, 969 F.Supp. 794, 797 (D.D.C.1997).[11] Courts have further held that while the statutory cap on attorney's fees applies to actions brought directly under IDEA, the cap does not apply to fee awards in actions brought pursuant to section 1983 to enforce rights accorded under IDEA. *See Blackman v. Dist. of Columbia*, 145 F.Supp.2d 47, 51 (D.D.C.2001); *Petties v. Dist. of Columbia*, 55 F.Supp.2d 17, 18 (D.D.C.1999). Thus, courts may "both award and order immediate payment of attorneys' fees in excess of the statutory cap" when an action to enforce an IDEA violation is brought under section 1983. *Blackman v. Dist. of Columbia*, 150 F.Supp.2d 133, 135 (D.D.C.2001).

But these cases are not controlling here, for they do not address the issue of whether an IDEA plaintiff can invoke section 1983 *solely* to collect attorney's fees incurred during IDEA administrative proceedings. *Compare Zearley*, 116 F.Supp.2d at 114–15 (plaintiffs' claim for relief under section 1983 may be based upon substantive violations of IDEA found by the district court); *Blackman v. Dist. of Columbia*, 59 F.Supp.2d 37, 41 (D.D.C. 1999) (where plaintiffs sought and obtained equitable relief under IDEA and section 1983 in district court action, attorney's fees were available under section 1983); *Walker*, 969 F.Supp. at 795–96 (where complaint alleged substantive violations of IDEA, damages were available under section 1983). In fact, neither party has cited, nor has the Court found, any case on point.

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. In *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court recognized that section 1983 may be used to enforce violations of federal statutory, as well as constitutional law, although it does not authorize a suit for every alleged violation of federal law. *See also Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S.Ct. 2068,

---

**11.** The district court in *Walker* adopted a four-part test for such claims, requiring plaintiffs to show: (1) that the defendant violated IDEA; (2) that "exceptional circumstances" exist, such that the conduct of the defendant causing the IDEA violation was "persistently egregious and prevented or frustrated [plaintiff] from securing equitable relief under the IDEA"; (3) that the "District of Columbia has a custom or practice that is the moving force behind the alleged IDEA violations"; and (4) that "normal remedies offered under the IDEA—specifically, compensatory education—are inadequate to compensate [plaintiff] for the harm that he [or she] allegedly has suffered." *Walker v. Dist. of Columbia*, 157 F.Supp.2d 11, 30 (D.D.C.2001).

129 L.Ed.2d 93 (1994). The first inquiry in any section 1983 suit is whether plaintiffs have been deprived of a "right." *See Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *see also Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (a plaintiff seeking redress through section 1983 must first establish the violation of a federal constitutional or statutory right); *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (to state a claim under section 1983, a plaintiff must first establish the violation of a right secured by the Constitution or laws of the United States); *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (dismissing plaintiff's section 1983 claim because the plaintiff was not "deprived" of a constitutionally protected right).

■ In deciding whether a statutory provision gives rise to a federal right, courts consider whether the provision in question creates obligations binding on the governmental unit, as opposed to "do[ing] ... [nothing] more than express[ing] a congressional preference for certain kinds of treatment." *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) (quoting *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 19, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)). Specifically, the Supreme Court has considered three factors when determining whether a particular statutory provision gives rise to a right. First, "Congress must have intended that the provision in question benefit the plaintiff." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (citing *Wright v. City of Roanoke Redev. Housing Auth.*, 479 U.S. 418, 430, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)). Second, "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its en-forcement would strain judicial competence." *Id.* at 340–41, 117 S.Ct. 1353 (quoting *Wright*, 479 U.S. at 431–32, 107 S.Ct. 766). Third, "the statute must unambiguously impose a binding obligation .... In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Id.* at 341, 117 S.Ct. 1353. *See also Livadas*, 512 U.S. at 132, 114 S.Ct. 2068.

■ Here, plaintiffs claim they have a "right to reasonable attorneys' fees" under IDEA that has been systematically violated by DCPS's consistent refusal to pay some or all of the fees requested. While plaintiffs offer ample evidence of systematic stonewalling by defendant of fee requests by prevailing parties, the right they seek to enforce is far from binding or clear. The statute allegedly conferring this right upon plaintiffs states that "[i]n any action or proceeding brought under this section, the court, in its discretion, *may* award reasonable attorneys' fees as part of the cost to the parents of a child with a disability who is the prevailing party." 20 U.S.C. 1415(i)(3)(B) (emphasis added). This language, couched in "precatory" terms, *see Blessing*, 520 U.S. at 340, 117 S.Ct. 1353, does not give plaintiffs an absolute right to fees. Instead, the statute gives plaintiffs the right *to bring an action in federal court* to seek a discretionary award of attorney's fees. Viewed in this light, it cannot be argued that DCPS has violated a right within the meaning of section 1983 by failing to fully and timely reimburse plaintiffs for the fees incurred during administrative proceedings. Thus, although DCPS's conduct regarding attorney fee petitions serves to frustrate disabled children from realizing their rights under IDEA and often fosters needless litigation that burdens plaintiffs, the judiciary and District taxpayers, its conduct

cannot be transformed into a section 1983 action. *See Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 119, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (section 1983 "does not provide a remedy for abuses that do not violate federal law").[12]

██ Therefore, because plaintiffs have not stated a valid claim under section 1983, the Court's award of attorney's fees will be issued pursuant to IDEA only. Similarly, because IDEA does not provide for declaratory relief, plaintiffs' request for a declaratory judgment ordering DCPS reimbursement of fees within forty-five days of invoice submission by future prevailing parties represented by Ms. Wulkan must be denied.

## CONCLUSION

For the reasons presented above, plaintiffs' Motion for Summary Judgment will be granted in part and denied in part. Pursuant to 20 U.S.C. § 1415(i)(3)(B), plaintiffs are entitled to attorney's fees and costs in the amount of $352,714.58, as well as pre- and post-judgment interest. As prevailing parties in this IDEA action, plaintiffs are also entitled to reasonable attorney's fees and costs incurred in bringing this litigation. *See Holbrook,* 305 F.Supp.2d at 49 n. 2. Plaintiffs' request for declaratory judgment and an attorney's fees award pursuant to 42 U.S.C. §§ 1983 and 1988 is denied. A separate Order Accompanies this Memorandum Opinion.

## *ORDER*

For the reasons given in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Motion of the Defendants to Dismiss Certain Claims in the Complaint is **DENIED**; it is

**FURTHER ORDERED** that Plaintiffs' Motion to Strike Defendants' Motion to Dismiss Certain Claims in the Complaint is **DENIED AS MOOT**; it is

**FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment is **GRANTED** except that Plaintiffs' request for declaratory judgment and an attorneys' fees award pursuant to 42 U.S.C. §§ 1983 and 1988 is **DENIED**; it is

**FURTHER ORDERED** that Plaintiffs are entitled to a judgment for fees and costs in the amount of $352,714.58 pursuant to 20 U.S.C. § 1415(i)(3)(B). The specific amounts awarded to each Plaintiff are as follows:

- $7,738.16 and $6,645.69 to Kathryn Kaseman
- $2,974.49 and $5,252.90 to Ishmael Ballinger
- $3,139.75 to Travis Butler
- $3,836.19 to Rakim Camon
- $1,351.35 to Mary Cohen
- $945.11 to Kendra Corley
- $941.06 to Jason Davis
- $5,785.70 to Decostia Edwards
- $1,165.50 to Antonio Elliott
- $3,982.00 to Caitlin Emeritz
- $2,390.45 to Justine Glickman
- $2,726.69 to Darius Herskovitz
- $6,178.04 and $8,541.83 to Dhevan Huggins
- $4,148.93 to TeShan Jordan
- $10,043.00 to Phillip McFadden

12. This ruling is not inconsistent with the IDEA case law in this Circuit. In *Johnson,* for example, the Court held that plaintiffs had sufficiently alleged a section 1983 action by claiming that "DCPS has a custom, policy, or practice of interfering with the right to counsel guaranteed by IDEA." 190 F.Supp.2d at

47. There, DCPS had, *inter alia,* conditioned settlement of IDEA claims on plaintiffs' waiver of their attorney's fees claims. *Id.* The plaintiffs had a valid 1983 action because DCPS's settlement demands violated plaintiffs' right *to bring suit for attorney's fees* conferred by section 1415(i)(3)(B).

- $9,137.04 to Diante McLeod
- $4,627.08 and $851.98 to Shavae Nelson
- $6,958.86, $5,029.91 and $6,783.22 to Stephon Nelson
- $5,149.39 to Lareno O'Neal
- $3,257.96 to Joseph Scorah
- $5,525.26 to Clifton Thompson
- $8,965.11 and $8,263.37 to TyShard Watson
- $2,956.15 to Ashley Blue
- $1,182.89 and $5,660.29 to Kala Blue
- $4,171.88 to Ayanna Blue
- $8,550.15 to Herbert Briscoe
- $12,395.76 to Timothy Brown
- $7,390.43 to Sampson Burke
- $6,140.53 to Zachary Canada–Marcus
- $4,372.49 to Brent Curry
- $6,367.66 to David Drew
- $11,252.09 to Jeanetta Drew
- $6,626.20 to Zenobia Fisher
- $13,990.35 to Andrew Franklin
- $19,532.47 to Alexandra Hind
- $14,387.30 to Shannay Jones
- $5,949.98 to Britney McQueen
- $7,891.15 and $8,563.71 to DayQuiwan Nelson
- $37,911.97 to Michael Rankin
- $7,903.21 and $4,887.20 to Terrell Thomas
- $4,755.49 to Terrik Watson
- $6,166.23 to Jesse Wright; it is

**FURTHER ORDERED** that Plaintiffs are awarded pre-judgment interest calculated at the prime-rate on each award from the date that plaintiffs filed this suit, and if any of the judgments granted above are not paid within 31 days of the entry of this Order, any unpaid amount will bear interest at the statutory rate established by 29 U.S.C. § 1961; and it is

**FURTHER ORDERED** that Plaintiffs are awarded reasonable attorney's fees and costs incurred in this fee litigation, subject to the submission of an affidavit within 20 days from the date of this Order justifying those fees and costs.

**SO ORDERED.**