**Devon Michelle ABRAHAM, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**No. CIV.A.01–0027(RMC).**

United States District Court, District of Columbia.

Sept. 30, 2004.

Ronald Lee Drake, Washington, DC, for Plaintiffs.

.Charlotte Anne Bradley, U.S. Attorney's Office, Melvin W. Bolden, Jr., Robert C. Utiger, Office of Corporation Counsel, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

COLLYER, District Judge.

This lawsuit was filed on January 8, 2001, by Ronald L. Drake, attorney-at-law, on behalf of a group of parents of approximately 125 disabled children who require special education services from the District of ·Columbia Public Schools ("DCPS"). Mr. Drake seeks to recover attorneys' fees arising from his representation of these clients in administrative proceedings to secure rights established by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* The administrative proceedings at issue appear to have been completed between March 1996 [1] and 2001.

Despite attempts at mediation, the parties have been unable to resolve a single one of these fee claims. While there are many reasons for this failure, the present posture of the case precludes any settlement without judicial determination of certain outstanding legal issues. The parties have submitted briefs discussing the facts and issues of law in dispute, as well as the appropriate billing rate for Mr. Drake. The Court will address them in turn.

### I. BACKGROUND

Congress enacted IDEA to ensure that disabled children receive "a free appropriate public education that emphasizes special education and related services de-

---

1. A Hearing Officer Decision ("HOD") or settlement agreement between DCPS and Saul Benjamin Edwin Lewis was dated March 13, 1996, according to the "Prevailing Party Documentation" submitted by Mr. Drake on March 10, 2001.

signed to meet their unique needs and prepare them for employment and independent living[.]" 20 U.S.C. § 1400(d)(1)(A). Parents of a disabled child must be notified of any proposed change in "the identification, evaluation, or educational placement of the child," and are permitted to challenge "any matter relating [there]to[.]" *Id.* §§ 1415(b)(3)(B), (b)(6). After the possibility of mediation, parents are afforded the opportunity to have their complaints considered in "an impartial due process hearing[.]" *Id.* § 1415(f). IDEA specifies certain "safeguards" for the hearing process, including "the right to be accompanied and advised by counsel[.]" *Id.* § 1415(h)(1). Any party aggrieved by the result of such a hearing may "bring a civil action ... in any State court of competent jurisdiction ... or in a district court of the United States ...." *Id.* § 1415(i)(2)(A).

Not surprisingly, having provided explicitly for the safeguard of counsel for parents, IDEA also contemplates the award of attorneys' fees. At § 1415(i)(3), which grants jurisdiction to federal district courts, the statute provides that, "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." *Id.* § 1415(i)(3)(B). Attorneys' fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished" without a bonus or multiplier. *Id.* § 1415(i)(3)(C). No attorneys' fees may be awarded "for services performed subsequent to the time of a written offer of settlement to a parent" if the offer is made

more than ten days before the administrative proceeding, it is not accepted, and "the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." *Id.* § 1415(i)(3)(D). If, however, a parent is the prevailing party and "was substantially justified in rejecting the settlement offer[,]" an award of attorneys' fees and costs may be made despite § 1415(i)(3)(D). *Id.* § 1415(i)(3)(E).

Each disabled child covered by IDEA is entitled to an "individualized education program" ("IEP") that is developed and overseen by an "individualized education program team" ("IEP Team") consisting of the parents of the child, special education teachers, and others. *Id.* § 1414(d). Attorneys' fees may not be awarded for any meeting of an IEP Team "unless such meeting is convened as a result of an administrative proceeding or judicial action ...." *Id.* § 1415(i)(3)(D)(ii). IDEA specifically provides for mediation of disputes over the education of a child with a disability. *Id.* §§ 1415(b)(5), (e). No attorneys' fees are available for a mediation that precedes the filing of a complaint relating to the education of a disabled child [2] or the placement of such a child in an alternative educational setting under § 1415(k). *Id.* § 1415(i)(3)(D)(ii). However, at the discretion of the State (here, the District of Columbia), attorneys' fees may be paid for such pre-complaint mediation. *Id.*

## II. ANALYSIS

The specifics of the underlying administrative proceedings are not before the Court. The complaint alleges that all plaintiffs are or were "prevailing parties"

---

**2.** IDEA assures parents of "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(5).

in the administrative forum and that DCPS has "arbitrarily and without cause or justification refused to pay the amount of the bill submitted," or has made "only a partial payment thereon." Compl. ¶¶ 8, 9. The District of Columbia denies any wrong-doing and notes that, even today, plaintiffs' counsel has not submitted his billing records in an intelligible format for review and evaluation. On January 14, 2004, DCPS presented six defenses to the plaintiffs' claims:

1. The plaintiff is not a prevailing party because the [due process] hearing terminated in a settlement and not a decision in the plaintiff's favor.

2. The plaintiff is not a prevailing party because, even though a purported Hearing Officer Decision issued, that decision was no more than the recognition of a settlement.

3. The claim is time barred by either the statute of limitations, the doctrine of laches, or both.[3]

4. The claimed hours are not associated with the actual litigation of a due process hearing . . . .

5. [The p]laintiff failed to exhaust its administrative remedies by submitting invoices to [DCPS] for payment.

6. The claim arose after filing of this suit and has not been brought within this case by amendment of the complaint.

Notice of Prelim. Defenses, Attachment A at 1–2. As a result, DCPS, after three and one half years of litigation and numerous efforts and hours at settlement and mediation, now finds itself attacking each and every hour claimed by the plaintiffs.

**3.** DCPS has since withdrawn the laches defense. Resp. to Pls.' Brief on Issues of Law in

### A. "Prevailing Party"

The parties concur that IDEA permits a district court to award reasonable attorneys' fees to the parents of a disabled child who is the "prevailing party." 20 U.S.C. § 1415(i)(3)(B). There is ample disagreement, however, over the meaning of that term. The parties seek specific guidance from the Court as to whether the plaintiffs may recover attorneys' fees for IDEA claims that result in settlement agreements or HODs recognizing settlements. The plaintiffs argue that "[p]revailing party status is attained if the litigation resolves some dispute which affects the behavior of the defendant toward the plaintiff." Pls.' Brief as to the Facts and Issues of Law in Disp. at 8. DCPS, on the other hand, asserts that *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), "ruled that statutory provisions allowing the award of attorneys' fees to 'prevailing parties' do *not* apply where the litigation has been terminated by agreement of the parties." Resp. to Pls.' Brief on Issues of Law in Disp. at 3 (emphasis in original).

Prior to 2001, courts applied the "catalyst" theory to determine whether a plaintiff was a "prevailing party" under fee-shifting statutes such as the IDEA. *See Smith v. Roher,* 954 F.Supp. 359, 363 (D.D.C.1997) (catalyst theory applied to IDEA fee claim); *see also Blackman v. District of Columbia,* 59 F.Supp.2d 37, 41 (D.D.C.1999) (catalyst theory applied in 42 U.S.C. § 1983 context). In 2001, however, the Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources,* 532 U.S.

Disp. at 13.

598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), changed the landscape for awarding attorneys' fees under fee-shifting statutes by rejecting the "catalyst" theory and adopting a more stringent definition of "prevailing party."

*Armstrong v. Vance,* 328 F.Supp.2d 50, 56 (D.D.C.2004). *Buckhannon* involved care homes that provided assisted-living services to elderly residents in West Virginia. The homes failed a fire marshal inspection in 1997 because not all residents were capable of "self-preservation"—*i.e.,* moving themselves (without assistance) from situations involving imminent danger—as required by state law at the time. *Buckhannon,* 532 U.S. at 600, 121 S.Ct. 1835. When the government threatened to shut down these residential care facilities, the operator sued for injunctive and declaratory relief that the "self-preservation" requirement violated the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 *et seq.,* and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* In 1998, the West Virginia Legislature changed the law and the case was dismissed as moot. The operator thereafter requested attorneys' fees as the "prevailing party" under the "catalyst theory." The District Court denied the motion and the Fourth Circuit affirmed. The Supreme Court then granted *certiorari* to address "whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon,* 532 U.S. at 600, 121 S.Ct. 1835.

In holding that the "catalyst theory" is not a proper basis for an award of attor-

neys' fees under the FHAA and ADA, the Supreme Court noted the "American Rule," whereby parties normally pay their own fees without regard to litigation result. *Id.* at 602, 121 S.Ct. 1835 ("[W]e follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" (quoting *Key Tronic Corp. v. United States,* 511 U.S. 809, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994))). Reviewing its prior cases on point, the Supreme Court cited *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam) ("Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims."), and *Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) ("[R]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail."), for the proposition that "a 'prevailing party' is one who has been awarded some relief by the court[.]" *Buckhannon,* 532 U.S. at 603, 121 S.Ct. 1835. The Supreme Court further stated, "In addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." *Id.* at 604, 121 S.Ct. 1835. Thus, the Supreme Court concluded that its past decisions, "taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees."[4] *Id.*

There is little doubt that *Buckhannon* applies to IDEA. *See, e.g., J.C. v. Reg'l Sch. Dist. 10,* 278 F.3d 119 (2d Cir.2002);

---

4. The Supreme Court has "only awarded attorney's fees where the plaintiff has received a judgment on the merits or obtained a court-ordered consent decree ....". *Id.* at 605, 121 S.Ct. 1835 (citation omitted).

see also Buckhannon, 532 U.S. at 603 n. 4, 121 S.Ct. 1835. The attorneys' fee provisions in the FHAA and ADA essentially mimic § 1415(i)(3)(B) of IDEA; all use the term "prevailing party."[5]  Indeed, the D.C. Circuit has interpreted the attorneys' fee provision in the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), consistent with Buckhannon even though FOIA uses the language "substantially prevail[.]" Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy, 288 F.3d 452 (D.C.Cir.2002).

A murkier issue is whether Buckhannon precludes a plaintiff from recovering attorneys' fees for a claim that is resolved through private settlement.  There is a split in the circuits on this legal question and the D.C. Circuit has not (yet) entered the fray.  In Barrios v. California Interscholastic Federation, the Ninth Circuit reiterated its position that "a plaintiff 'prevails' when he or she enters into a legally enforceable settlement agreement against the defendant[.]" 277 F.3d 1128, 1134 (9th Cir.2002).  Cognizant of Buckhannon's rejection of the "catalyst theory," the Ninth Circuit remarked that its plaintiff "does not claim to be a 'prevailing party' simply by virtue of his being a catalyst of policy change; rather, his settlement agreement affords him a legally enforceable instrument, which ... makes him a 'prevailing party.'" Id. at 1134 n. 5.

Other circuits take a more strict view of Buckhannon.  In T.D. v. LaGrange School District No. 102, 349 F.3d 469 (7th Cir. 2003), the Seventh Circuit concluded that a private settlement did not confer "prevailing party" status on an IDEA claimant. While acknowledging that some settlement

agreements might be sufficient for purposes of § 1415(i)(3)(B), the Seventh Circuit noted that "[t]here must be some official judicial approval of the settlement and some level of continuing judicial oversight." Id. at 479.  The First, Second, and Third Circuits also "have held that IDEA plaintiffs who achieve their desired result via private settlement may not be considered 'prevailing parties,' and thus cannot recover attorneys' fees under 20 U.S.C. § 1415(i)." Doe v. Boston Pub. Schs., 358 F.3d 20, 25 (1st Cir.2004); see also J.C. v. Reg'l Sch. Dist. 10, 278 F.3d 119 (2d Cir. 2002); John T. v. Del. County Intermediate Unit, 318 F.3d 545, 558 (3rd Cir.2003).

Consistent with this nationwide confusion, the judges of this district are not in agreement on the matter.  Judge Reggie B. Walton, in Akinseye v. District of Columbia, 193 F.Supp.2d 134 (D.D.C.2002), rev'd on other grounds, 339 F.3d 970 (D.C.Cir.2003), reluctantly adopted the reasoning of the Second Circuit in J.C. and declined to award attorneys' fees under IDEA to plaintiffs who had settled their administrative claims.  Judges Colleen Kollar–Kotelly, Gladys Kessler, and Richard J. Leon have entered similar rulings. See Heintz v. District of Columbia, No. 01–1124(CKK), 2002 U.S. Dist. LEXIS 27534 (Apr. 29, 2002); Alegria v. District of Columbia, No. 00–2583(GK), 2002 U.S. Dist. LEXIS 16898 (Sept. 9, 2002); Adams v. District of Columbia, 231 F.Supp.2d 52 (D.D.C.2002).  In contrast, Judge Emmet G. Sullivan has decided that "[t]he holding of Buckhannon does not preclude an award of fees to plaintiffs who settle IDEA claims during either administrative or judicial proceedings." Johnson v. District of Columbia, 190 F.Supp.2d 34, 44 (D.D.C.

5.  Section 3613(c)(2) of the FHAA provides, "[T]he court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee and costs." 42 U.S.C. § 3163(c)(2). Section 12205 of the ADA similarly states, "[T]he court ..., in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs ...." 42 U.S.C. § 12205.

2002). Judge Sullivan determined in *Johnson* that a private settlement agreement alters the parties' legal relationship in a "real and substantial manner." *Id.* at 45 (citing *Kokkonen v. Guardian Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)).

■ Upon review of the relevant case law, this Court concludes that a private settlement agreement, by itself, cannot transform an IDEA claimant into a "prevailing party" under § 1415(i)(3)(B). The Supreme Court in *Buckhannon* specifically distinguished a "private settlement" from a consent decree, which "is a court-ordered 'change [in] the legal relationship between [the plaintiff] and the defendant.'" *Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). According to the Supreme Court, "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees." *Id.* at 604 n. 7, 121 S.Ct. 1835. Even if this pronouncement is dictum,[6] the Court will not ignore it.

Nonetheless, if a settlement agreement is properly incorporated into an HOD, an IDEA claimant may be eligible for attorneys' fees (assuming that the HOD offers sufficient relief on the merits). In such a situation, the claimant would have prevailed at the *administrative* level. *See Warner v. Indep. Sch. Dist. No. 625*, 134 F.3d 1333, 1336 (8th Cir.1998) ("[A] parent who has prevailed at the state administrative level may file a federal court action seeking a reasonable attorneys' fee award under IDEA."); *Adams*, 231 F.Supp.2d at 56 n. 4 ("The *Buckhannon* holding does not overturn this circuit's established precedent that a court can authorize attorney's fees for a party that prevailed during an administrative hearing.").[7] The fact that the parties may have agreed to the HOD's terms is of no consequence, provided that the HOD constitutes a final administrative decision.[8] This is analogous to a consent decree in a civil action.

### B. Statute of Limitations

■ IDEA itself does not specify a particular limitations period for challenging an HOD or requesting reimbursement of attorneys' fees. Resp. to Pls.' Brief on Issues of Law in Dispute. Consequently, the Court "may 'borrow' one from an analogous state cause of action, provided that the state limitations period is not inconsistent with underlying federal policies." *Spiegler v. District of Columbia*, 866 F.2d 461, 463–64 (D.C.Cir.1989).[9] The plaintiffs

---

6. The Ninth Circuit stated:
   While dictum in Buckhannon suggests that a plaintiff "prevails" only when he or she receives a favorable judgment on the merits or enters into a court-supervised consent decree, we are not bound by that dictum, particularly when it runs contrary to this court's holding in [*Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115 (9th Cir.2000) ], by which we are bound.
   *Barrios*, 277 F.3d at 1134.

7. Given Congress's desire to permit attorneys' fees for a claimant who prevails at the administrative level, *Buckhannon's* apparent requirement that a "prevailing party" either receive a "judgment on the merits" or obtain a "court-ordered consent decree" cannot be read literally for purposes of a due process hearing (where neither remedy is available).

8. It would be insufficient for an HOD merely to mention the existence of a settlement agreement or to dismiss the claim as moot due to settlement. For an IDEA claimant to be a "prevailing party," the HOD must order DCPS to undertake or refrain from some conduct consistent with that statute. The sample HODs submitted by the plaintiffs on July 28, 2004, appear to be satisfactory in this regard.

9. In *Spiegler*, the D.C. Circuit concluded that the "30–day local time limit for petitions for review of agency orders [under the Education of the Handicapped Act ('EHA'), 20 U.S.C.

contend that the relevant statute of limitations is three years pursuant to D.C.Code § 12–301(8).[10] DCPS counters "that a far shorter 30 day statute [embodied in Rule 15(a) of the Rules of the District of Columbia Court of Appeals] is appropriate."[11] Resp. to Pls.' Brief on Issues of Law in Disp. at 8.

Like many issues involving IDEA, there is a "circuit split" over which type of statute of limitations should be applied to requests for attorneys' fees.

> [T]he courts have split on this question because they do not agree on whether attorney fee claims are "another phase of the administrative proceeding," *see, e.g., King [v. Floyd County Bd. of Educ.,* 228 F.3d 622, 625 (6th Cir.2000) ], which these Courts conclude are more suitable for coverage by shorter limitations periods, *see, e.g., id.* at 626; *Powers [v. Ind. Dep't of Educ.,* 61 F.3d 552, 555 (7th Cir.1995) ], or whether such claims are "separate and different in kind from an action appealing the underlying administrative decision," *Curtis K. [v. Sioux City Cmty. Sch. Dist.,* 895 F.Supp. 1197, 1211 (N.D.Iowa 1995) ], that do not require prompt resolution to promote the IDEA's goals of securing expeditious education services for disabled children.

*Akinseye v. District of Columbia,* 193 F.Supp.2d 134, 144 (D.D.C.2002).

Obviously, there are sound reasons for deciding in favor of either a 30–day or 3–year limitations period. The former is analogous to the short periods allowed under federal and local rules for submitting requests for fees and costs at the end of litigation.[12] This view recognizes fee petitions as ancillary to the underlying dispute before the agency and not as *de novo* matters in court. A short time period would also aid school systems in their review of fee petitions; DCPS says that the delay in this matter effectively means that it has no staff who participated in the underlying administrative proceedings and who could comment on Mr. Drake's hours. Resp. to Pls.' Brief on Issues of Law in Disp. at 13. On the other hand, a longer period of time allows the question of fees to be kept completely separate from the issue of a student's education, which is the focus of the statute and which truly needs timely attention if the child is not to outgrow the chance for help. The Court's experience shows that a resolution of the merits of a dispute can easily get sidetracked by negotiations over fees, which would be to the detriment of the child student. In addition, fees can only be awarded by a court, so litigation over fees

§§ 1400–1485,] would be appropriate ...." *Id.* at 462.

**10.** "Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues ... for which a limitation *is not otherwise specially pre-scribed—*3 years[.]" D.C. Code § 12–301(8).

**11.** "Unless an applicable statute provides a different time frame, the petition for review must be filed within 30 days after notice is given, in conformance with the rules or regulations of the agency, of the order or decision sought to be reviewed." D.C. App. R. 15(a)(2).

**12.** See Fed. R. App. P. 39(d) (bill of costs to be filed within 14 days after entry of judgment); Fed. R. Civ. P. 54(d)(2)(B) (motion for attorneys' fees to be filed no later than 14 days after entry of judgment); D.C. App. R. 39(d) (bill of costs and fees to be filed within 14 days from the entry of judgment); Super. Ct. Civ. R. 54(d)(2)(B) (motion for attorneys' fees to be filed no later than 14 days after entry of judgment); see also Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(B) (application for fees and other expenses to be filed within thirty days of final judgment).

(as in this case) must inevitably occur at a different time, take place in a different forum, and concern different issues than the education of the disabled child. Allowing a longer period to elapse before fee petitions must be filed also allows the bundling of applications, as in this case, so as to reduce the number of individual lawsuits and ultimately save the parties and the Court time and energy. The plaintiffs also suggest that a short time period for filing fee petitions would reduce a parent's access to attorney representation.

■ With all of these considerations in mind, and guided by *Spiegler,* the Court concludes that the issue of attorneys' fees is indeed ancillary to the underlying dispute before an administrative agency; the 30–day limitations period selected by the D.C. Circuit for substantive appeals should be applied to attorneys' fee applications, as well. A short period for such applications is the rule in other litigation, *see supra* note 12, and the plaintiffs offer no compelling reason why something similar would not work in the IDEA context. The Court is particularly persuaded by the reasoning of the Seventh Circuit in *Powers* that a short period for fee applications is consistent with the law and good policy.

■ In this case, however, there is no indication that DCPS timely informed the plaintiffs of its position that the 30–day time limit applies to requests for attorneys' fees. Without such prior notice, it would be inappropriate to apply the short period to the claims here. In *Spiegler,* the D.C. Circuit found that the EHA "impose[d] a duty on the District to give, at the time a final administrative decision is rendered, clear notice of the availability of judicial review and of the 30–day limitations period." [13] *Spiegler,* 866 F.2d at 467.

The lack of notice in this lawsuit counsels against strict adherence to the short statute of limitations. Moreover, the state of the law is unsettled on this issue. "At least [four] other judges or magistrate judges of this Court have borrowed the three-year limitations period provided by Section 12–301(8) for IDEA attorneys' fee petitions." *Armstrong v. Vance,* 328 F.Supp.2d 50, 56 n. 1 (D.D.C.2004). For these reasons, the Court tolls the statute of limitations for each plaintiff for a period of three years. *See Spiegler,* 866 F.2d at 468.

### C. Subsequent Work

The plaintiffs argue that they may recover fees for work performed subsequent to the issuance of HODs. "Defendants do not contest that, under very narrow circumstances that may be true." Resp. to Pls.' Brief on Issues of Law in Disp. at 14. However, Mr. Drake has never submitted his billing records in an intelligible form from which it might be determined whether there is an actual dispute between these parties on post-HOD work he may have done. Therefore, the Court accepts the position proffered by DCPS and declines to rule further without details.

The plaintiffs also advance fee applications for work on IDEA claims that are mentioned in the briefs but not in the complaint. They suggest that leave to amend the complaint should be freely given, but have made no effort to actually amend their complaint. The Court declines to rule on matters not presented in the complaint.

### D. Failure to Prosecute

The parties have made efforts to settle various aspects of this case, but have stum-

---

**13.** The EHA "expressly require[d] state agencies to *'fully* inform the parents or guardian . . . of all procedures available pursuant to [section 1415].'" *Spiegler,* 866 F.2d at 467. IDEA contains a similar disclosure provision in § 1415(d)(2).

bled in each instance because of the paucity of detailed information. DCPS now asserts that the entire suit should be dismissed on the grounds that the failure to substantiate the fee claims with legitimate billing records amounts to a failure to prosecute. As noted above, DCPS argues that it has been severely prejudiced by this neglect because it no longer employs any of the attorneys who represented DCPS at the due process hearings and will find itself unable to comment on whether the hours were reasonable.

Very serious legal differences have separated these parties much more than the absence of detailed records, amazing as it is that Mr. Drake has not yet produced readable billing records. There is no doubt, however, that he has represented many successful parents who obtained Orders from Hearing Officers to DCPS for their disabled children. DCPS has heretofore willingly engaged in numerous settlement efforts to identify an appropriate way to resolve this dispute. The Court cannot overlook Mr. Drake's successes and deny him all recovery, when DCPS has continued to litigate other serious legal issues affecting his right to recover fees.

The Court directs Mr. Drake to prepare his billing records in typewritten form so that they can be reviewed in a meaningful manner by DCPS and the Court. Unless clear and concise typewritten records are submitted, the Court will enter no fee awards in the plaintiffs' favor.[14] *See infra* Part II.E. DCPS can analyze these records using its expertise in the customary time obligations of IDEA litigation.

### E. Reasonable Hourly Rate

The parties dispute the appropriate billing rate for Mr. Drake. The plaintiffs assert that he should be compensated at the rate of $390.00 per hour for all compensable hours. DCPS argues that this rate should be reduced by 33.3% "for failure of plaintiffs to meet their burden." Def.'s Resp. to Pls.' Brief as to Approp. Bill. Rate at 5.

"[A] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates." *Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir.1995). To demonstrate a reasonable hourly rate, the plaintiffs must show: the attorney's billing practices; the attorney's skill, experience, and reputation; and the prevailing market rates in the relevant community. *Id.* In *Save Our Cumberland Mountains, Inc. v. Hodel,* the D.C. Circuit suggested that attorneys should be paid "at rates commensurate with prevailing community standards of attorneys of like experience doing the same sort of work in the same area." 857 F.2d 1516, 1521 (D.C.Cir.1988). When an award of attorneys' fees will occur years after counsel provided client services, a court may use current market rates for the entire period to recognize the difficulties presented for the lawyer's representation. *See Smith v. Roher,* 954 F.Supp. 359, 364–365 (D.D.C.1997).

Mr. Drake has 40 years of experience as an attorney and more than 15 years in the practice of special education law. He tells the Court that he has been very active, both in IDEA cases and before the D.C. Council, in advancing the interests of disabled children. He asserts that he has participated in hundreds of IDEA hearings and contributes to a website providing information on such issues.[15] In the past, he says, he was a member of the Indiana Assembly and a hearing officer at a nation-

14. The plaintiffs' motion for an interim award of attorneys' fees is denied because the Court, at present, cannot determine the number of hours reasonably expended by Mr. Drake.

15. The website address is <dcpswatch.com>.

al political convention. He initially sought $380 per hour because that was the rate for attorneys with twenty or more years of experience on the *Laffey* Matrix at the time his pleadings were filed.[16] In his reply brief, he increased his requested rate to $390 per hour, as the U.S. Attorney's Office recently issued a new version of the *Laffey* Matrix for the time period of June 1, 2004, to May 31, 2005.

DCPS stresses that the plaintiffs have not carried their burden of proving a fee of even $380 per hour for Mr. Drake. The school system does not contest that a single amount should be applied to all compensable hours; rather, it argues that Mr. Drake has only 15 years of relevant practice; that he has not submitted affidavits from others to attest to his skill and superior lawyering abilities, as counsel did in *Laffey*; and that he has not shown that attorneys practicing in the area of special education law actually earn $380 per hour.[17]

■ Neither party has presented an abundance of evidence, as opposed to argument, to support its respective position. Therefore, the Court is left with the updated *Laffey* Matrix and Mr. Drake's uncontested recounting of his experience in the field and as a litigator. *See, e.g., Bailey v.*

*District of Columbia,* 839 F.Supp. 888 (D.D.C.1993). Of note, Mr. Drake advises that DCPS paid him at the hourly rate of $361 after Judge Kessler declined to depart from the *Laffey* Matrix in another IDEA case.[18] *See Nesbit v. District of Columbia,* No. 01–2429(GK) (D.D.C. Nov. 4, 2003). Earlier, "[o]n June 4, 2001, Judge [Royce C.] Lamberth awarded this counsel $335.00 per hour." Pls.' Brief as to Approp. Bill. Rate at 9. The Court will apply the *Laffey* Matrix similar to Judge Kessler—*i.e.,* without the 33.3% reduction requested by DCPS—but will credit Mr. Drake with no more than 19 years of *relevant* experience. Assuming Mr. Drake's representations are true, a reasonable rate for his legal services is $345 per hour.[19]

### III. CONCLUSION

Perhaps with these legal issues resolved, this case can move forward to resolution. The parties shall meet to discuss whether settlement is possible and file a joint status report with the Court no later than October 29, 2004.

**SO ORDERED.**

---

16. The *Laffey* Matrix is "a schedule of charges based on years of experience" [that was] developed in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983), *rev'd on other grounds,* 746 F.2d 4 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985). *Covington,* 57 F.3d at 1105. It continues to be used, and annually updated, by the federal government. "Courts in this Circuit have found rates charged by attorneys in IDEA actions to be reasonable if they conform to the United States Attorney's Office's *Laffey* Matrix." *Kaseman v. District of Columbia,* 329 F.Supp.2d 20, 25 (D.D.C. 2004).

17. "Where ... counsel charge below-market rates out of public interest motives, the 'rea-

sonable hourly rate' is properly calculated not according to the hourly rates that counsel have actually charged in similar cases, but according to 'rates that reflect the prevailing community rate for similar legal services.' " *Sexcius v. District of Columbia,* 839 F.Supp. 919, 922 (D.D.C.1993) (quoting *Save Our Cumberland Mountains,* 857 F.2d at 1517).

18. The November 2003 order states, "Plaintiffs are entitled to be paid at the rate of *$315* per hour, in accordance with the so-called Laffey Matrix." (emphasis added).

19. Before the Court will officially declare this rate, Mr. Drake must submit an affidavit or other evidence supporting the representations he made in his briefs.